# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| HAROLD KRAFT as Trustee of the KRAFT FAMILY TRUST, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) C.A. No. 10816-CB |
| WISDOMTREE INVESTMENTS, INC., a Delaware corporation, | ) ) ) |
| Defendant, | ) ) ) |
| and | ) ) ) |
| TRADEWORX, INC., a Delaware corporation, | ) ) ) |
| Nominal Defendant. | ) |

## OPINION

Date Submitted:  May 5, 2016
Date Decided:  August 3, 2016

Stephen B. Brauerman, Vanessa R. Tiradentes and Sara E. Bussiere, BAYARD, P.A., Wilmington, Delaware; *Attorneys for Plaintiff*.

Martin S. Lessner and Lakshmi A. Muthu, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Jordan D. Hershman and Michael D. Blanchard, MORGAN, LEWIS & BOCKIUS LLP, Boston, Massachusetts; Christopher M. Wasil, MORGAN, LEWIS & BOCKIUS LLP, Hartford, Connecticut; *Attorneys for Defendant*.

Kurt M. Heyman, PROCTOR HEYMAN ENERIO LLP, Wilmington, Delaware; Michael F. Cockson, Adam M. Nodler and Brad W. Engelsma, FAEGRE BAKER DANIELS LLP, Minneapolis, Minnesota; *Attorneys for Nominal Defendant*.

**BOUCHARD, C.**

In this case, a stockholder of Tradeworx, Inc. seeks a declaration that shares issued to WisdomTree Investments, Inc. in 2000 are invalid because they were issued in exchange for services to be provided in the future, which was disallowed at the time under certain provisions of the Delaware General Corporation Law and the Delaware Constitution. Those provisions have since been amended to permit shares to be issued for that form of consideration.

WisdomTree has moved to dismiss the complaint. Its primary argument is that plaintiff's claim, which was filed almost fifteen years after the challenged share issuance, is time-barred. More specifically, WisdomTree argues that plaintiff's claim for declaratory relief should be dismissed based on a strict application of the three-year statute of limitations governing actions "based on a statute" (10 *Del. C.* § 8106) or, in the alternative, based on the doctrine of laches by applying this limitations period by analogy.

These seemingly routine questions are not so easily answered. As discussed below, the mixture of equitable and legal matters falling within the subject matter jurisdiction of the Court of Chancery complicates its application of time-bar principles that originated in equity (laches) and at law (statutes of limitations). In this opinion, after reviewing the case law in this area to provide a framework for analysis, I conclude that plaintiff's claim is barred under the doctrine of laches by applying the statute of limitations by analogy.

1

## I.    BACKGROUND

Unless noted otherwise, the facts recited in this opinion are based on the allegations of the Verified Complaint for Declaratory Judgment filed on March 20, 2015.

### A.    The Parties

Plaintiff Harold Kraft serves as trustee of the Kraft Family Trust dated March 30, 2000, and brings this action in that capacity.  The Kraft Family Trust owns approximately 59,055 shares of Series D Convertible Preferred Stock and 1,180,000 shares of Series X Convertible Preferred Stock of Tradeworx, Inc. ("Tradeworx").  For simplicity, this opinion refers to Mr. Kraft, as trustee, and the Kraft Family Trust together as "Kraft."  Tradeworx, which is named as a nominal defendant, is a Delaware corporation headquartered in New Jersey.

Defendant WisdomTree Investments, Inc. ("WisdomTree"), formerly known as Individual Investor Group, Inc., is a Delaware corporation headquartered in New York.  For simplicity, this opinion refers to defendant at all times as "WisdomTree" despite its previous name.

### B.    WisdomTree's and Kraft's Investments in Tradeworx

On May 4, 2000, WisdomTree and Tradeworx entered into a Stock Purchase Agreement under which WisdomTree received 1,045,000 shares of Tradeworx common stock in exchange for WisdomTree's agreement to provide certain print

and online advertising services to Tradeworx over the following eight quarters, valued at $1.8 million. These shares are evidenced by a stock certificate dated May 4, 2000. Shortly after entering into the Stock Purchase Agreement, WisdomTree publicly disclosed that it was suffering financial problems and sold or discontinued certain print magazines in which it had agreed to provide advertising for Tradeworx.

In 2013, WisdomTree made a demand to inspect the books and records of Tradeworx and asserted that it had been conferred additional Tradeworx shares through an anti-dilution provision in the Stock Purchase Agreement. The parties were unable to agree on WisdomTree's ownership interest in Tradeworx. The anti-dilution provision and any shares that may have been issued under it are not at issue in this case.

Kraft was not a stockholder in Tradeworx when WisdomTree and Tradeworx entered the Stock Purchase Agreement in May 2000. Kraft acquired its Tradeworx stock in November 2000 and January 2003.[1] The complaint alleges that "until recently" Kraft "was not aware that Tradeworx and WisdomTree executed the Stock Purchase Agreement, and was not aware that WisdomTree claimed to own a substantial majority of Tradeworx stock."[2] The complaint does

---

[1] Compl. ¶ 19.

[2] Compl. ¶ 20.

not specifically allege, however, that Kraft was unaware of WisdomTree's original share ownership when Kraft made its initial investments in Tradeworx, and the record otherwise provides no indication one way or the other.

## C. Procedural Posture

On March 20, 2015, Kraft filed this action against WisdomTree. The sole relief sought is a request for a declaratory judgment that the Tradeworx shares WisdomTree acquired through the Stock Purchase Agreement are void because they were issued in exchange for future services, a practice that was prohibited at the time under Article 9, Section 3 of the Delaware Constitution and Section 152 of the Delaware General Corporation Law (the "DGCL").[3] Although Kraft names Tradeworx as a nominal defendant, it brings its claim directly rather than derivatively.

On April 14, 2015, WisdomTree filed a motion to dismiss the complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim for relief. On

---

[3] Compl. ¶ 26. In 2000, Article 9, Section 3 of the Delaware Constitution stated: "No corporation shall issue stock, except for money paid, labor done or personal property, or real estate or leases thereof actually acquired by such corporation." Del. Const. art. 9, § 3 (repealed 2004). Similarly, in 2000, Section 152 of the DGCL provided that consideration for the issuance of stock must be "in the form of cash, services rendered, personal property, real property, leases of real property or a combination thereof." 8 *Del. C.* § 152 (amended 2004). Today, Section 152 provides, in relevant part, as follows: "The consideration . . . for subscriptions to, or the purchase of, the capital stock to be issued by a corporation shall be paid in such form and in such manner as the board of directors shall determine. The board of directors may authorize capital stock to be issued for consideration consisting of cash, any tangible or intangible property or any benefit to the corporation, or any combination thereof."

4

April 15, 2015, nominal defendant Tradeworx filed an answer submitting itself to the jurisdiction of the Court of Chancery but providing no other response to the complaint. After the completion of briefing, oral argument on WisdomTree's motion to dismiss was heard on December 15, 2015.

On February 11, 2016, Tradeworx filed a motion for leave to amend its answer by adding a cross-claim against WisdomTree. The proposed cross-claim seeks a declaratory judgment that the shares Tradeworx purported to issue to WisdomTree are either void or voidable. Argument on Tradeworx's motion for leave to amend was heard on May 5, 2016.

## II. LEGAL ANALYSIS

### A. Legal Standard

When considering a motion to dismiss under Court of Chancery Rule 12(b)(6), the Court will "accept all well-pleaded factual allegations in the Complaint as true" and "deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[4]

Under Court of Chancery Rule 15(a), leave to amend a complaint "shall be freely given when justice so requires."[5] "A court will not grant a motion to amend,

---

[4] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

[5] Ct. Ch. R. 15(a).

however, if the amendment would be futile. An amendment is futile if it would not survive a motion to dismiss under Court of Chancery Rule 12(b)(6)."[6]

## B. The Parties' Contentions

WisdomTree advances two primary lines of argument in support of its motion to dismiss: (1) that the complaint is time-barred because it was filed almost fifteen years after WisdomTree acquired its shares of Tradeworx, and (2) that WisdomTree's provision of advertising space to Tradeworx was a valid form of consideration for the issuance of stock under Article 9, Section 3 of the Delaware Constitution and Section 152 of the DGCL as those provisions existed in 2000 because the advertising space constituted "property" and was not a promise to perform "future services." Because the first issue is dispositive, I do not reach the second issue.[7]

With respect to the first issue, WisdomTree argues that the complaint is time-barred based on a strict application of a statute of limitations on the theory that Kraft's claim for declaratory relief based upon the interpretation of a statute (DGCL § 152) and an analogous constitutional provision is a purely legal claim. Alternatively, Wisdom Tree argues that even if Kraft sought an equitable remedy,

---

[6] *Cartanza v. LeBeau*, 2006 WL 903541, at *2 (Del. Ch. Mar. 28, 2006, *as revised*, Apr. 3, 2006).

[7] I also do not reach the question whether Kraft's claim is derivative, which was first raised in WisdomTree's reply brief.

the statute of limitations would apply by analogy and bar the claim; and even if the statute of limitations did not apply at all, the complaint would be barred by laches.

The application of statutes of limitations in the Court of Chancery to address time-bar defenses has been the source of some confusion. Before analyzing WisdomTree's time-bar arguments and how they implicate the relevant statute of limitations (10 *Del. C.* § 8601), I review the case law in this area to clarify the framework for my analysis.

## C. The Framework for Analyzing Whether a Claim Is Time-Barred

The Court of Chancery is a court of limited subject matter jurisdiction. It can acquire subject matter jurisdiction in the first instance by three different means: "(1) the invocation of an equitable right; (2) a request for an equitable remedy when there is no adequate remedy at law; or (3) a statutory delegation of subject matter jurisdiction."[8] A prime example of the third source of jurisdictional authority is 8 *Del. C.* § 111, which provides the Court of Chancery with nonexclusive jurisdiction to interpret, apply, enforce or determine the validity of certificates of incorporation, bylaws, stock instruments, and other corporate instruments.[9] This provision gives the Court of Chancery jurisdiction over some

---

[8] *Duff v. Innovative Discovery LLC*, 2012 WL 6096586, at *4 (Del. Ch. Dec. 7, 2012).

[9] 8 *Del. C.* § 111(b) ("Any civil action to interpret, apply or enforce any provision of this title may be brought in the Court of Chancery.").

7

subject matter that is not inherently equitable to take advantage of the Court's special corporate expertise.[10] Another example is 8 *Del. C.* § 145(k), which vests the Court of Chancery with exclusive jurisdiction to hear and determine advancement and indemnification claims that previously were brought in the Superior Court.[11]

The Court of Chancery also can obtain subject matter jurisdiction over purely legal claims through its clean-up doctrine. That doctrine, also known as ancillary jurisdiction, provides the Court of Chancery with jurisdiction to resolve purely legal causes of action that are before it as part of the same controversy over

---

[10] Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 2.02[d], at 2-18 (2014) (hereinafter *Corporate and Commercial Practice*) ("The premise for the sweeping provision is plainly related more to Chancery's special corporate expertise than to traditional notions as to the appropriate scope of equitable subject matter jurisdiction."); *see also Pot-Nets Coveside Homeowners Ass'n v. Tunnell Cos., L.P.*, 2015 WL 3430089, at \*3 (Del. Super. May 26, 2015) ("Possibly the most prominent example [of legislative alterations to jurisdiction] lies in the Court of Chancery's jurisdiction over the Delaware General Corporation Law, which, though encountering several potential equity-based issues, is statutory in nature, and therefore would ordinarily fall within the court of law's jurisdiction.").

[11] 69 Del. Laws, c. 261 § 2 (June 27, 1994) (adding Section 145(k) to DGCL); *see also Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at \*4 n.24 (Del. Ch. May 3, 2002) ("Until enactment of Section 145(k) in 1994, the Superior Court was frequently the appropriate forum for an officer seeking reimbursement by virtue of his right to indemnification because, by that point, his claim was for a liquidated sum and, thus, remediable at law.").

which the Court originally had subject matter jurisdiction in order to avoid piecemeal litigation.[12]

Laches is an equitable doctrine "rooted in the maxim that equity aids the vigilant, not those who slumber on their rights."[13] A finding of laches generally requires the presence of three factors: the claimant's knowledge of the claim, unreasonable delay in bringing the claim, and resulting prejudice to the defendant.[14] A party guilty of laches will be prevented from enforcing a claim in equity.[15] As discussed below, a presumption of laches arises in certain contexts when a plaintiff brings a claim outside of a relevant statute of limitations period.

Statutes of limitations exist at law and serve to bar claims brought after the limitations period set forth in the statute has expired. Statutes of limitations traditionally do not apply directly to actions in equity, although courts of equity

---

[12] *See Corporate and Commercial Practice* § 2.04 at 2-78 to 2-80 ("[T]he Court of Chancery's authority to decide the entire controversy before it, including matters that otherwise would not be part of the Court's jurisdiction if standing alone, generally serves to avoid piecemeal litigation . . . .").

[13] *Whittington v. Dragon Gp., L.L.C.*, 991 A.2d 1, 8 (Del. 2009); *see also Lehman Bros. Hldgs. Inc. v. Spanish Broad. Sys., Inc.*, 2014 WL 718430, at *7 & n.43 (Del. Ch. Feb. 25, 2014) (noting that the maxim is a special form of the general principle that "he who seeks equity must do equity"), *aff'd*, 105 A.3d 989 (Del. 2014) (TABLE).

[14] *Whittington*, 991 A.2d at 8.

[15] *Gen. Video Corp. v. Kertesz*, 2008 WL 5247120, at *30 (Del. Ch. Dec. 17, 2008).

may apply them by analogy in determining whether a plaintiff should be time-barred under the equitable doctrine of laches.

The mixture of equitable and legal matters falling within the jurisdiction of the Court of Chancery complicates its application of time-bar principles that originated in equity and at law. The role of statutes of limitations in suits brought in the Court of Chancery historically depended on the type of claim and type of relief a plaintiff seeks. In an effort to provide clarity on this topic, I discuss below three different contexts implicating statutory limitations periods. I consider first the Court's approach to purely legal matters brought in Chancery, then the treatment of purely equitable matters, followed by cases in which the claim and the requested relief constitute some combination of legal and equitable subject matter.

### 1. Legal Claims Seeking Legal Relief

Legal claims seeking legal relief—for instance, a breach of contract claim requesting money damages—ordinarily would fall outside the jurisdiction of this Court. But other sources, such as the equitable cleanup doctrine or DGCL § 111, sometimes provide this Court with jurisdiction over such claims. In such a case, would the statute of limitations apply strictly because the suit is purely legal in nature, or would it only apply by analogy to the equitable doctrine of laches because the claim is brought in the Court of Chancery?

Our case law does not offer a clear answer.  Some cases suggest that a legal claim seeking only legal relief is subject to the statute of limitations, even if it is brought in the Court of Chancery.[16]  Indemnification and advancement cases that are contractual in nature but statutorily subject to this Court's jurisdiction[17] are notable examples.  In *Cochran v. Stifel Financial Corporation*, then-Vice Chancellor Strine considered which statute of limitations to apply to an indemnification claim, but appeared to apply the statute of limitations analysis strictly rather than by analogy, and made no mention of laches.[18]  The Supreme

---

[16] *See, e.g.*, *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 559 (Del. 2002) (holding that indemnification claims brought in Court of Chancery are contractual rights subject to the statute of limitations defined in 10 *Del. C.* § 8106); *Scharf v. Edgcomb Corp.*, 2004 WL 718923, at *6 n.18 (Del. Ch. Mar. 24, 2004) (noting that *Stifel* foreclosed the argument that delay in filing indemnification claim should be judged under laches instead of statute of limitations), *rev'd on other grounds*, 864 A.2d 909 (Del. 2004); *Stevanov v. O'Connor*, 2009 WL 1059640, at *7 (Del. Ch. Apr. 21, 2009) (comparing laches for equitable claims, statutes of limitations for ancillary legal claims, and analogous statutes of limitations for concurrent jurisdiction equitable claims) ("When exercising ancillary jurisdiction over legal claims, however, this Court will apply the applicable statute of limitations found at law."); *Corporate and Commercial Practice* § 11.06[c] at 11-73 (2014) ("Moreover, the Court of Chancery may apply a statute of limitations in connection with purely legal claims that are before the Court under its ancillary jurisdiction.").

[17] 8 *Del. C.* § 145(k) ("The Court of Chancery is hereby vested with exclusive jurisdiction to hear and determine all actions for advancement of expenses or indemnification brought under this section . . . .").

[18] *Cochran v. Stifel Fin. Corp.*, 2000 WL 286722, at *5, *9 (Del. Ch. Mar. 8, 2000), *aff'd in part*, *rev'd in part on other grounds*, 809 A.2d 555 (Del. 2002).

11

Court agreed, noting that "because indemnification is essentially a contractual right, the three year statute of limitations is applicable to indemnification claims."[19]

This Court's decision in *Lehman Brothers* supports this proposition from a different angle.[20] In that case, which fell within the Court's subject matter jurisdiction under DGCL § 111,[21] the Court distinguished between legal and equitable relief, noting that "a limitations period analogous to the statute of limitations will presumptively bar equitable relief, and conclusively bar legal relief."[22] The Court refused to apply the doctrine of laches to bar the claim of a plaintiff who had filed a breach of contract claim for damages within the statutory limitations period, but arguably had delayed unreasonably nonetheless. The Court noted that the equitable maxim "he who seeks equity must do equity" does not apply to plaintiffs seeking purely legal relief and thus that "a plaintiff who unreasonably delays will not be barred from seeking legal relief if the action is brought within the analogous limitations period."[23]

---

[19] *Stifel*, 809 A.2d at 559 (citing *Scharf v. Edgcomb Corp.*, 1997 WL 762656, *5 (Del. Ch. 1997)).

[20] *Lehman Bros.*, 2014 WL 718430 (Del. Ch. Feb. 25, 2014), *aff'd*, 105 A.3d 989 (Del. 2014) (TABLE).

[21] *Id.* at *7 n.46.

[22] *Id.* at *7.

[23] *Id.* at *7-8.

The Court in *Lehman Brothers* found this result was intuitive because "it would make little sense for a plaintiff in the Court of Chancery, under the clean-up doctrine, or, as here, by statute, to be placed in a worse position than if she had filed in a Delaware court of law where laches would not bar suit."[24] This concept is equally sensible in the reverse: a plaintiff vindicating a purely legal action in the Court of Chancery as a result of ancillary jurisdiction or some other jurisdictional source should not be placed in a potentially better position to seek to avoid a statute of limitations than if she had filed in a Delaware court of law by invoking the more flexible doctrine of laches.

This view has not been universally held. For instance, in *O'Brien v. IAC/Interactive Corporation*, this Court declined to apply the statute of limitations inflexibly to an indemnification claim despite its contractual nature.[25] In doing so,

---

[24] *Id.* at *7. In its order affirming *Lehman Brothers*, the Supreme Court expressly declined to take a view on the question whether the doctrine of laches should have applied. *Lehman Bros. Hldgs. Inc. v. Spanish Broad. Sys., Inc.*, 2014 WL 7010807, at *1 (Del. Dec. 11, 2014) (ORDER) ("In so affirming, however, we do not imply any agreement or disagreement with the Court of Chancery's determination that the doctrine of laches itself did not bar Lehman from proceeding.").

[25] *O'Brien v. IAC/Interactive Corp.*, 2009 WL 2490845, at *7-9 (Del. Ch. Aug. 14, 2009), *aff'd*, 26 A.3d 174 (Del. 2011); *see also Acierno v. Goldstein*, 2005 WL 3111993, at *5 (Del. Ch. Nov. 16, 2005) (noting that for a "purely legal claim" brought under the Court's ancillary jurisdiction that fell outside of the statutory limitation period, the claimants should not benefit from a full-fledged laches inquiry, but nonetheless opining that they may still attempt to "bear the burden of proving that imposition of the legal limitations period would be unjust in the circumstances of this case" rather than be conclusively barred).

the Court noted defendant's argument that the indemnification action was a legal right seeking a legal remedy but declined to classify the claim either way, instead concluding that the Court's exclusive jurisdiction to hear indemnification actions demonstrated a legislative intent to have them decided by a court of equity, and that the claims were therefore "more appropriately examined under the doctrine of laches, which guides this Court's determinations of timeliness and serves the independent purposes of equity."[26] The Court did not invoke tolling, instead using a laches analysis.[27]

In affirming the decision, the Supreme Court in *IAC* did not address whether the action was inherently legal, due to its contractual nature, or equitable, due to the legislature's decision to give the Court of Chancery exclusive jurisdiction over such claims. Instead, the Supreme Court found that "the trial court's deviation

---

[26] *O'Brien*, 2009 WL 2490845, at *7 n.39. If the Court of Chancery's postulation is correct that indemnification claims should be treated as claims in equity because the Court of Chancery has exclusive jurisdiction to hear them, then its holding arguably would not contradict the theory that purely legal claims should be strictly subject to statutes of limitations. Rather, the rationale for not applying the statute of limitations strictly in that circumstance would be that the legislature determined, in essence, to convert indemnification claims into equitable actions by placing "exclusive jurisdiction" for such claims in the Court of Chancery when it enacted 8 *Del. C*. 145(k). This theory, however, has not been universally embraced. *See Yuen v. Gemstar-TV Guide Int'l, Inc.*, 2004 WL 1517133, at *3 (Del. Ch. June 30, 2004) ("This court's statutory authority under 8 *Del. C*. § 145(k) to make determinations regarding advancement does not turn an advancement claim into a claim for equitable relief.").

[27] *See O'Brien*, 2009 WL 2490845, at *8 ("Although statutes of limitations that are exceeded always operate to bar actions at law absent applicability of a tolling doctrine, they are not controlling in equity.").

14

from the applicable statute of limitations in applying the doctrine of laches" was warranted by the "unusual circumstances presented."[28]  The Supreme Court noted that "[t]here is no precise definition of what constitutes unusual conditions or extraordinary circumstances" but identified several factors "that could bear on the analysis" including:

> 1) whether the plaintiff had been pursuing his claim, through litigation or otherwise, before the statute of limitations expired; 2) whether the delay in filing suit was attributable to a material and unforeseeable change in the parties' personal or financial circumstances; 3) whether the delay in filing suit was attributable to a legal determination in another jurisdiction; 4) the extent to which the defendant was aware of, or participated in, any prior proceedings; and 5) whether, at the time this litigation was filed, there was a bona fide dispute as to the validity of the claim.[29]

In *Levey v. Brownstone Asset Management*, the Supreme Court applied its decision in *IAC* outside the context of an indemnification claim to hold that the statute of limitations did not bar a plaintiff's claim for entitlement to cash distributions based on his alleged ownership interest in two entities.[30]  The Supreme Court did not analyze whether the statute of limitations should be applied strictly, but instead assessed whether to apply the statute by analogy and declined to do so.  Citing *IAC* as "controlling authority," the Supreme Court noted the

---

[28] *IAC/Interactive Corp. v. O'Brien*, 26 A.3d 174, 175-76 (Del. 2011).

[29] *See id.* at 178.

[30] *See Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 767-68, 770-72 (Del. 2013).

presence of four of the five "unusual conditions and extraordinary circumstances" it had identified in *IAC* that justified deviating from the limitations period and avoiding a finding of laches.[31]

In sum, tension seems to exist between *Stifel* and certain Court of Chancery cases on the one hand, and *IAC* and *Levey* on the other, as to whether statutes of limitations are to be applied strictly to purely legal claims. There is, in my view, logical force for strictly applying statutes of limitations in this situation because a plaintiff pressing a purely legal claim in the Court of Chancery should not be able to avoid the statute of limitations by invoking the doctrine of laches when the limitations period would have conclusively barred the same claim had it been brought in a court of law. Nonetheless, as the Supreme Court's precedents in *Stifel*, *IAC*, and *Levey* reflect, there is not currently a clear answer on this issue and, in certain circumstances yet to be fully defined, the Supreme Court has left open the possibility of avoiding a strict application of a statute of limitations to a purely legal claim where "unusual conditions and extraordinary circumstances" exist, such as those identified in *IAC*.

---

[31] *Id.* at 770-72. The Supreme Court also held in the alternative that the statute of limitations was tolled in any case. *Id.* at 772-73.

### 2.      Equitable Claims Seeking Equitable Relief

The next context to consider concerns equitable claims seeking equitable remedies—for instance, a request for an injunction based on a breach of fiduciary duty. Statutes of limitations do not strictly bind the Court of Chancery when it addresses such purely equitable matters, because "actions in equity are time-barred only by the equitable doctrine of laches."[32] In such cases, however, this Court will still look to comparable statutes of limitations at law, and give the analogous limitations period "great weight in deciding whether the claims are barred by laches."[33] Sometimes, the application of a limitations period to an equitable claim

---

[32] *Whittington*, 991 A.2d at 9 (internal quotation marks omitted).

[33] *Id.* How much weight should be afforded the statute of limitations has varied, but changes in the Court's language suggest that it has increased over time. At this point, some view it as a presumption rebuttable only by tolling exceptions that also would apply at law. This was not always the case. Consider the following sequence of cases, listed in reverse chronological order: *In re Sirius XM S'holder Litig.*, 2013 WL 5411268, at *4 (Del. Ch. Sept. 27, 2013) (addressing primarily equitable remedies for an equitable fiduciary duty claim) ("[A] plaintiff in equity cannot file beyond the statute of limitations unless a tolling doctrine exists that would justify an equally late filing in a court of law.); *Vredenburgh v. Jones*, 349 A.2d 22, 36 (Del. Ch. 1975) (giving "considerable weight" to the limitations period in the absence of special mitigating circumstances); *Bay Newfoundland Co. v. Wilson & Co.*, 4 A.2d 668, 671 (Del. Ch. 1939) ("In the absence of some special circumstances, in determining whether the complainant's rights have been lost by laches, a Court of Equity will, perhaps, usually follow the analogy of the Statute of Limitations governing somewhat similar rights in a Court of Law; but whether that rule will be applied necessarily depends on the facts of the particular case.") (citations omitted); *Wright v. Scotton*, 121 A. 69, 73 (Del. 1923) ("Under ordinary circumstances, a suit in equity . . . will be stayed after[] the time fixed by the analogous statute of limitations at law; but, if unusual conditions or extraordinary circumstances make it inequitable to . . . forbid its maintenance after a longer period than that fixed by the statute, the Chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it.") (quoting 4

17

is explicitly attributed to the "unreasonable delay" element of laches.[34]  The Court

also may presume prejudice if the claim is brought after the analogous limitations

period has expired.[35]  Where no analogous limitations period exists, "the legal

statute of limitations cannot apply by analogy," and instead the Court relies

entirely on the traditional principles of laches.[36]  In short, in purely equitable

actions, the Court will afford significant weight to an analogous statute of

limitations when one exists and will presumptively bar an action filed after the

---

*Pomeroy on Equity Jurisprudence* 1441); *Perkins v. Cartmell*, 4 Del. 270, 270 (Del.
1845) ("[Statutes of limitations] do not in terms extend to courts of equity, but these
courts approve of the principle, and apply it to analogous cases.").

Other jurisdictions also have grappled with the question of how much force an analogous
statute of limitations should have.  *See* Dan B. Dobbs, *Law of Remedies* § 2.4(4), at 78
(2d ed. 1993) ("When courts look to an analogous statute of limitations for guidance, and
that statute has run, they may (1) presume unreasonable delay and prejudice, but permit
the plaintiff to rebut the presumption; (2) treat the statute as one element 'in the congeries
of factors to be considered.'  Some authority has gone beyond either of these rules by
holding that equity will follow the law and (3) give the statute conclusive effect.").

[34] *See, e.g.*, *Osborn v. Kemp*, 991 A.2d 1153, 1162 (Del. 2010) ("While the doctrine of
laches does not prescribe a specific time bar to determine reasonableness, we traditionally
have taken into account the legal statute of limitations when assessing whether the party
unreasonably delayed bringing suit."); *Whittington v. Dragon Gp. L.L.C.*, 2010 WL
692584, at *6 (Del. Ch. Feb. 15, 2010), *aff'd and remanded on other grounds*, 998 A.2d
852 (Del. 2010) (TABLE).

[35] *See In re Sirius*, 2013 WL 5411268, at *4 ("After the statute of limitations has run,
defendants are entitled to repose and are exposed to prejudice as a matter of law by a suit
by a late-filing plaintiff who had a fair opportunity to file within the limitations period.").

[36] *See Kirby v. Kirby*, 1989 WL 111213, at *5 (Del. Ch. Sept. 26, 1989).

limitations period, absent tolling or unusual circumstances that would make it inequitable to do so.

### 3. Matters Involving Legal and Equitable Elements

The final context to consider involves some combination of legal and equitable elements. A suit may consist of a legal claim seeking equitable relief—for instance, a breach of contract claim demanding specific performance. Or a claim may sound in equity but request legal relief—a breach of fiduciary duty action seeking monetary damages. Although it was not always the case, both of these categories now generally require application of the statute of limitations by analogy. This change appears to be the result of a weakening definition of the Court's concurrent jurisdiction over time.

*Kahn v. Seaboard* explains the Court of Chancery's shifting definition of concurrent jurisdiction and its approach to applying the statute of limitations to such cases. In *Kahn*, Chancellor Allen noted that in the Court's early jurisprudence, it would determine whether to apply an analogous statute of limitations by looking to the plaintiff's *claim*, as opposed to the requested remedy.[37] When a plaintiff requested an equitable remedy for a claim that was legal in nature, the action would fall within the Court's concurrent jurisdiction, and

---

[37] *Kahn v. Seaboard Corp.*, 625 A.2d 269, 272-73 (Del. Ch. 1993) (Allen, C.).

19

the Court would apply the statute of limitations by analogy.[38] This rule prevented plaintiffs from circumventing a statute of limitations that would bar their legal claim by requesting equitable relief instead.[39]

---

[38] *See id.* Adding further complexity, the meaning of "concurrent jurisdiction" has been the subject of some debate. *Compare Corporate and Commercial Practice* § 2.03[b], at 2-23 to -24 (lamenting the confusing nomenclature of "concurrent jurisdiction" and giving example of an injunction for a breach of contract), *and Kahn*, 625 A.2d at 272 (listing specific performance of a contract as example of concurrent jurisdiction), *with* 1 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* §§ 138-39 (5th ed. 1941) (noting that a suit to compel specific performance of a contract is under exclusive equity jurisdiction, but that concurrent jurisdiction involves legal claims seeking relief that is technically equitable but closely resembles legal relief), § 170 (describing wholly equitable remedies that can be used to enforce legal rights but nonetheless constitute part of equity's exclusive jurisdiction), *and* § 175 (detailing the required similarity to legal relief in order for concurrent jurisdiction to attach). *See also id.* § 180 n.7 (noting that some cases erroneously referring to concurrent jurisdiction in fact belong to exclusive jurisdiction due to the purely equitable remedy sought); *Artesian Water Co. v. Lynch*, 283 A.2d 690, 692 (Del. Ch. 1971) (seeming to agree with Pomeroy's definition of concurrent jurisdiction by noting that it exists "where the relief sought in equity in a so-called complaint for an accounting is actually the mere recovery of money, as is the case here, an action for such type of relief is analogous to an action at law for the same or equivalent relief."); *Harman v. Masoneilan Int'l, Inc.*, 442 A.2d 487, 497-98 (Del. 1982) (describing scholarly disagreement about definition of concurrent jurisdiction); *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 n.6 (Del. Ch. 1991) (noting that exclusive and concurrent jurisdiction are used different ways by different commentators).

[39] This rationale was particularly apt when the Court's concurrent jurisdiction was limited to legal claims seeking equitable remedies that were the *functional equivalent* of legal ones. *See supra* note 38. In such cases, a plaintiff could have brought the same claim and sought a nearly identical remedy in a court of law, increasing the risk that a plaintiff would bring a claim in Chancery solely for the purpose of avoiding a limitations defense. *See Kirby*, 1989 WL 111213, at *5 (". . . in cases of concurrent jurisdiction, it would thwart the legislative purpose to allow plaintiffs to circumvent the statutory bar simply by filing in Chancery . . . ."); *Bovay v. H.M. Byllesby & Co.*, 29 A.2d 801, 803 (Del. Ch. 1943) ("[Courts of equity], apparently, take the view that it would be unjust to permit a litigant, having a legal right, to evade the statute, barring its enforcement, by seeking the aid of another court, having concurrent jurisdiction, merely because it could give more adequate and complete relief."); *Bush v. Hillman Land Co.*, 2 A.2d 133, 134 (Del. Ch.

Over time, the Court expanded its application of statutes of limitations to include the opposite circumstance—an equitable claim requesting a legal remedy, such as damages for a breach of fiduciary duty. As Chancellor Allen noted in *Kahn*, as the Court's understanding of concurrent jurisdiction weakened, its use of limitations periods widened:

> The workability of this doctrinal structure is dependent upon an understanding of the "nature" of various sorts of jurisdiction that the English Court of Chancery and, by adoption, our own court, possesses. As decades passed, however, this knowledge evolved from every day practical knowledge of lawyers to professional exotica. By the mid-twentieth century, judges were beginning to grow less comfortable with those old concepts of concurrent and exclusive chancery jurisdiction. In 1934 Chancellor Wolcott applied the old learning in an easy case, *Cochran v. F.H. Smith & Co.*, 20 Del. Ch. 159, 174 A. 119 (1934). The case was easy because the right asserted was not of equitable origin (the claim was common law fraud). It could have been brought in the Superior Court. Thus, it plainly was a concurrent jurisdiction case to which the statute should apply by analogy and it was so applied. But in reaching its decision to apply the statute of limitations by analogy to bar the action, the court noticed that "the bill does not seek any remedy peculiar to equity." *Id.* 174 A. at 121. The comment reflects, I think, a weakening of the old system because the request for an equitable remedy would not in any case have altered the character of the jurisdiction that had been invoked or the correct outcome of the motion.[40]

The Court began to widen its analysis to examine whether the *relief* being sought was equitable in nature, and at the same time began to shy away from drawing

---

1938) (discussing defendant's argument that, in a concurrent jurisdiction case, plaintiffs "by choosing equity rather than law as the forum should not be permitted to escape the bar which the statute would impose had they brought their suit at law.").

[40] *Kahn*, 625 A.2d at 273.

conclusions based on a strictly defined concurrent jurisdiction.[41] The reach of the

statute of limitations thus expanded to include equitable claims seeking legal

relief.[42] The rationale for this expanded application is somewhat weaker, since a

plaintiff would not have been able to bring an equitable claim in a court of law, so

there would be less risk that a plaintiff would be appearing in the Court of

Chancery merely to attempt to circumvent the statute of limitations. Regardless of

the historical factors that led to this point, it is now established that statutes of

limitations also will apply by analogy to equitable claims requesting legal relief.[43]

---

[41] *Id.* at 273-74.

[42] Although it is now clear that statutes of limitations apply to equitable claims seeking legal relief, such claims do not necessarily fall within the technical definition of concurrent jurisdiction, although the issue may be largely academic. *See Price v. Wilm. Trust Co.*, 1996 WL 560177, at *1 (Del. Ch. Sept. 3, 1996) ("[N]o matter what the form of the remedy, equity is in cases of this type [breach of express trust] exercising its exclusive, not concurrent, jurisdiction.") (Allen, C.). To the extent I use concurrent jurisdiction to describe both types of cases in this opinion, I do so only for simplicity in discussing the application of statutes of limitations, which now apply both to legal claims seeking equitable relief and to equitable claims seeking legal relief.

[43] *See Kahn*, 625 A.2d. at 273-74; *see also In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998) (applying statute of limitations to breach of fiduciary duty claim seeking money damages and accounting) ("It is well-settled under Delaware law that a three-year statute of limitations applies to claims for breach of fiduciary duty."), *aff'd*, 725 A.2d 441 (Del. 1999) (TABLE); *Boeing v. Shrontz*, 1992 WL 81228, at *2 (Del. Ch. Apr. 20, 1992) (applying statute of limitations to claim for breach of fiduciary duty primarily seeking money damages) ("I find that the Amended Complaint seeks essentially legal relief and, thus, is governed by § 8106."); *Halpern v. Barran*, 313 A.2d 139, 141 (Del. Ch. 1973) ("It is by now firmly established that the three-year statute of limitations, 10 *Del. C.* § 8106, applies to shareholder derivative actions which seek recovery of damages or other essentially legal relief."); *Laventhol, Krekstein, Horwath & Horwath v. Tuckman*, 372 A.2d 168, 169-70 (Del. 1976) (recognizing general application of limitations period for damages claims while

Having concluded that statutes of limitations apply by analogy to equitable claims seeking legal relief and vice versa, I next consider what such an analogous application entails. In many cases, the application of the analogous limitations period appears virtually automatic, so as to preclude any other analysis.[44] Although some cases within the Court's concurrent jurisdiction note that statutory limitations periods should not be applied inflexibly, the exceptions often are limited to situations in which the limitations period would be tolled.[45] For instance, in *In re Sirius XM Shareholder Litigation*, then-Chancellor Strine noted that "a filing after the analogous statute of limitations has run cannot be justified

---

discussing limited exception for fraudulent self-dealing) ("Generally speaking, an action in the Court of Chancery for damages or other relief which is legal in nature is subject to the statute of limitations rather than the equitable doctrine of laches.").

[44] *See, e.g.*, *Kahn*, 625 A.2d at 274 ("*When the relief sought in Chancery is legal in nature*, it is clear that Chancery will apply the statute of limitations rather then [sic] the equitable doctrine of laches.") (quoting *Bokat v. Getty Oil Co.*, 262 A.2d 246, 250 (Del. 1970) (emphasis added); *id.* at 272 ("When the court applies a statute of limitation by analogy, however, it makes no such specific inquiry [into the case]; it makes no assessment of fairness or prejudice."); *Halpern*, 313 A.2d at 141; *Artesian Water Co.*, 283 A.2d at 692 ("[W]here the statute bars the legal remedy, it shall bar the equitable remedy in analogous cases, or in reference to the same subject matter . . . .").

[45] *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, at *6 (Del. Ch. Jan. 27, 2010) (Strine, V.C.) ("In the absence of an applicable tolling doctrine, a claim cannot be pressed in the Court of Chancery if the statute of limitations has passed."), *aff'd*, 7 A.3d 485 (Del. 2010); *Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008) ("[E]ven in actions seeking damages or essentially legal relief this court does not strictly apply statutes of limitations. Rather, the running of the limitations period can be tolled in certain limited circumstances.") (internal quotation marks omitted).

except in the 'rare' and 'unusual' circumstance that a recognized tolling doctrine excuses the late filing."[46]

Cutting in the opposite direction is the rule established by the Supreme Court in *IAC* and *Levey*, which allows an exception for extraordinary circumstances, even for purely legal matters.[47] Since the *IAC* exception applies to purely legal matters, presumably it also would apply where the statute of limitations traditionally has applied only by analogy rather than strictly.[48] In other

---

[46] *In re Sirius*, 2013 WL 5411268, at *4 (finding that claims for breach of fiduciary duty and associated requests for declaratory judgments were time-barred by statute of limitations). In *Sirius*, the requested relief was primarily declaratory and injunctive in nature, although the plaintiffs also requested money damages. Second Amended Verified Class Action and Derivative Complaint, *In re Sirius XM S'holder Litig.*, Cons. C.A. No. 7800-CS (Jan. 28, 2013). The fact that the claim was equitable and the relief was primarily equitable arguably places the case in the previously discussed category of exclusive equity jurisdiction, thus making its presumptive application of the statute of limitations all the more striking. *See supra* note 33 and accompanying text. Presumably, any automatic application of a statutory limitations period to a purely equitable action also would apply in a concurrent jurisdiction case.

[47] *See Levey*, 76 A.3d at 770-72; *IAC*, 26 A.3d at 177-79.

[48] *See Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.*, 2015 WL 5724838, at *13 (Del. Ch. Sept. 30, 2015) (finding it reasonably conceivable, in defamation claim seeking both equitable and legal relief, that one or more *IAC* factors could be present to justify deviating from limitations period, and thus declining to dismiss for laches); *Stewart v. Wilm. Trust SP Servs., Inc.*, 112 A.3d 271, 293-94 (Del. Ch. 2015) (using *IAC* test and declining to apply statute of limitations to fiduciary duty, contract, and negligence claims seeking damages) ("Nevertheless, in cases where 'unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer period than that fixed by the statute,' this Court has the power to set aside the statutory limitation period and analyze whether the claim was untimely based on laches principles.") (quoting *IAC*, 26 A.3d at 177-78), *aff'd*, 126 A.3d 1115 (Del. 2015) (TABLE).

words, there is meaningful tension between these cases and *Sirius*:  *IAC* allows for exceptional circumstances even in a purely legal context that should call for the strictest application of statutory limitations period, while *Sirius* seems to apply the statute without exception (other than tolling doctrines) even in a purely equitable context that warrants the least strict application of the statute of limitations.  This tension raises the question whether time-bar analysis should be limited to tolling doctrines or include a separate inquiry of unusual circumstances under *IAC* and *Levey*.[49]

Notwithstanding these tensions, an analogous limitations period should operate as a strong presumption of laches for cases in this Court's concurrent jurisdiction, which generally will obviate the need for a traditional laches inquiry.[50]

---

[49] *See Pulieri v. Boardwalk Props., LLC*, 2015 WL 691449, at \*10 (Del. Ch. Feb. 18, 2015) ("Although this Court's laches inquiry is fact-specific, it is often guided (but not necessarily dictated) by the analogous statute of limitations."); *id.* (noting that, under *Sirius*, filing after limitations period is only justified in rare circumstance in which a recognized tolling doctrine applies); *id.* at \*11 (noting that *IAC* test is for unusual circumstances that "may justify deviating from the three-year limitations period").  In *Pulieri*, I noted the possibility of both a tolling exception and an exception under the *IAC* test.  As discussed above, *Levey* concluded that the limitations period did not apply both because unusual circumstances existed under *IAC* and because of equitable tolling, suggesting that the analyses are distinct.

[50] *See Whittington*, 991 A.2d at 9 ("The general rule for determining which statute of limitations should apply by analogy to a suit in equity is that 'the applicable statute of limitations should be applied as a bar in those cases which fall within that field of equity jurisdiction which is concurrent with analogous suits at law.'") (quoting *Ohrstrom v. Harris Trust Co.*, 1998 WL 44983, at \*2 (Del. Ch. Jan. 28, 1998)); *U.S. Cellular Inv. Co. of Allentown v. Bell Atl. Mobile Sys., Inc.*, 677 A.2d 497, 502 (Del. 1996) ("Where a plaintiff seeks a legal remedy in a court of equity and a statute of limitations exists for an

25

The presumption is rebuttable, however, either by a recognized tolling doctrine or by the presence of extraordinary circumstances, such as those indicated in *IAC*.[51]

\* \* \* \* \*

To summarize, although our law is not a model of clarity, I surmise the following from the previous discussion:

1. If a plaintiff brings a legal claim seeking legal relief in the Court of Chancery, the statute of limitations (and its tolling doctrines) logically should apply strictly and laches should not apply. Otherwise, one may be able to circumvent the statutory time-bar that would have applied to the same claim if it had been brought in a court of law. Under the precedents of *IAC* and *Levey*, however, extraordinary circumstances may provide an

---

analogous action at law, the statutory period may create a presumptive time period for application of laches to bar a claim."); *First State Towing, LLC v. Div. of State Police*, 2016 WL 2621137, at \*3 (Del. Ch. May 5, 2016) ("[W]hen claims are barred by a controlling statute of limitations, a court of equity need not engage in a traditional laches analysis.") (quoting *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 527 (Del. Ch. 2005)); *Whittington v. Dragon Gp. L.L.C.*, 2008 WL 4419075, at \*3 (Del. Ch. June 6, 2008) ("Where the plaintiff seeks legal relief or this court has concurrent jurisdiction, however, the court applies the statute of limitations by analogy. Absent a tolling of the limitations period, a party's failure to file within an analogous statute of limitations, if any, *is typically conclusive evidence of laches*.") (emphasis added); *Weiss*, 948 A.2d at 451 (Del. Ch. 2008) ("However, in a case such as this, where the plaintiff seeks legal relief or this court has concurrent jurisdiction, the court applies the statute of limitations by analogy."); *Bovay*, 29 A.2d at 803 ("But, in cases coming within their concurrent jurisdiction, it seems that Courts of Equity consider themselves bound to apply the analogous statutory period of limitations, governing actions at law.").

[51] *See supra* note 47.

exception to the strict application of statutes of limitations for purely legal matters, separate and apart from the application of tolling doctrines.

2. If a plaintiff brings an equitable claim seeking equitable relief, the case falls under the Court's exclusive equity jurisdiction. In this case, the doctrine of laches applies and any applicable statute of limitations would apply only by analogy, although the Court tends to afford great weight to the analogous statutory period, if one exists, and may bar a claim without further laches analysis if that period has been exceeded and the Court does not consider it inequitable to do so.

3. When an equitable claim seeks legal relief or a legal claim seeks equitable relief, the Court also will apply the statute of limitations by analogy, but with at least as much and perhaps more presumptive force given its quasi-legal status, and will bar claims outside the limitations period absent tolling or extraordinary circumstances.

**D. Kraft's Claim Is Time-Barred**

With the foregoing analytical framework in mind, I next analyze whether Kraft's claim is time-barred by considering the nature of Kraft's claim and the relief sought.

## 1. The Nature of Kraft's Claim

The essence of Kraft's complaint is that the shares of Tradeworx that WisdomTree purports to own are invalid because they were issued in violation of the Delaware Constitution and the DGCL as they existed at the time.[52] This issuance allegedly impaired the value of Kraft's shares, albeit through the disputed operation of an anti-dilution provision not at issue here.[53] Kraft brings this claim of invalidity against WisdomTree, Kraft's purported fellow stockholder.

Kraft does not explain the source of its right to bring a claim against WisdomTree. Kraft appears to have no relationship with WisdomTree, and Kraft is not suing derivatively on behalf of Tradeworx.[54] What is clear, however, is that Kraft's claim does not arise from a traditional equitable right.[55] Kraft does not invoke "a relationship between the parties uniquely recognized in chancery" or any

---

[52] Compl. ¶ 26.

[53] Compl. ¶¶ 2, 4.

[54] Indeed, Kraft concedes that it loses if its claim is deemed to be derivative because Kraft did not make a demand and does not contend that demand would be excused. Tr. Oral Arg. 61 (Dec. 15, 2015).

[55] *See generally Corporate and Commercial Practice* § 2.03[b][1], at 2-28 to -55 (listing traditional equitable rights giving rise to Chancery jurisdiction, including trusts, fiduciary rights, and derivative actions, among others); *see also Rizzo v. Joseph Rizzo & Sons Constr. Co.*, 2007 WL 1114079, at *2 (Del. Ch. Apr. 10, 2007) ("[C]ourts of this state have long recognized that a derivative claim is cognizable only in equity.") (internal quotation marks omitted).

right "based upon a fiduciary duty or other duty recognized solely in equity."[56] Kraft is not suing Tradeworx management for breaching its duties to stockholders, for instance, and it does not bring a suit derivatively on behalf of Tradeworx. Nor does Kraft raise any equitable theory against WisdomTree or point to any equitable principle on which its claim rests. Instead, Kraft relies entirely on its statutory claim under the DGCL and the Delaware Constitution.[57]

In my view, such statutory and constitutional claims are inherently legal in nature. In *Reed v. Brady*, this Court considered a plaintiff's request for a declaration that certain restrictions on his vehicle's emergency equipment violated the Delaware Constitution by limiting his ability to exercise his authority as a sheriff under the Delaware Constitution.[58] The Court dismissed the request for

---

[56] *McMahon v. New Castle Assocs.*, 532 A.2d 601, 602, 609 (Del. Ch. 1987) (Allen, C.).

[57] *See* Tr. Oral Arg. at 52 (Dec. 15, 2015) (agreeing that, but for the statute, Kraft would have no claim at all). In *Highlights for Children*, a case discussed further below, the Court addressed a similar issue in passing when it considered whether it had subject matter jurisdiction over a request for a declaratory judgment that shares were invalid because they were issued for no consideration, in violation of the Delaware Constitution at the time. Although it did not clearly demarcate the line between claim and relief, the Court noted that the constitutional question was the sole basis for questioning the validity of the shares. The Court went on to find that it had subject matter jurisdiction based on the *relief* plaintiff sought. But if the constitutional claim had been equitable, the Court would have had jurisdiction on that basis without needing further analysis. By implication, the claim itself was not inherently equitable, or the Court would not have needed to assess the nature of the relief sought. *See Highlights for Children, Inc. v. Crown*, 193 A.2d 205, 206 (Del. Ch. 1963).

[58] *Reed v. Brady*, 2002 WL 1402238, at *1 (Del. Ch. June 21, 2002), *aff'd*, 818 A.2d 150 (Del. 2003) (TABLE).

lack of subject matter jurisdiction because the plaintiff was "neither seeking to vindicate an equitable right nor, in this context, pursuing an equitable remedy."[59] The Court went on to note that "[i]ssues of statutory and constitutional interpretation are, beyond question, legal issues capable of resolution by the Superior Court, and declaratory relief is available there to the same extent as it is here."[60]

Here, not only does Kraft provide no equitable underpinning for its statutory or constitutional claim, it also does not allege that any of its own statutory or constitutional rights were violated, in contrast to *Reed v. Brady*. Kraft instead uses the constitution in the manner of a statute to show that certain corporate actions were invalid. For all of these reasons, Kraft's claim is purely legal in nature.

## 2. The Nature of Kraft's Requested Remedy

Kraft's only requested remedy is a declaratory judgment, which all courts in Delaware are authorized to issue under 10 *Del. C.* § 6501. A declaratory judgment is a creature of statute and "not a purely equitable remedy."[61] Whether a declaratory judgment is legal or equitable in nature depends on the underlying

---

[59] *Id.* at *3.

[60] *Id.* at *3 n.7.

[61] *Prestancia Mgmt. Gp., Inc. v. Va. Heritage Found., II LLC*, 2005 WL 1364616, at *7 (Del. Ch. May 27, 2005); *see also Reeder v. Wagner*, 2007 WL 3301026, at *1 (Del. Ch. Nov. 1, 2007) ("It is well settled that the Declaratory Judgment Act does not independently confer jurisdiction on this court.").

subject matter. Although most cases that address the nature of a declaratory judgment do so in the course of deciding whether there is jurisdiction to hear the case, they nonetheless shed light on whether the remedy is equitable or legal. Some cases have linked the nature of the declaratory judgment to the nature of the underlying claim.[62] Others have looked at the accompanying requested relief or the essence of the declaration being sought.[63] Thus, the nature of Kraft's requested declaratory judgment depends on its underlying context.

Kraft requests a declaratory judgment regarding the validity of WisdomTree's shares of Tradeworx. As I concluded above, Kraft's underlying claim is legal in nature because it is based in essence on a statute and has no basis in equity. Were I to determine the nature of the declaratory judgment based solely

---

[62] *See Heathergreen Commons Condo. Ass'n v. Paul*, 503 A.2d 636, 644 (Del. Ch. 1985) (stating that jurisdiction to issue declaratory judgment depends on legal or equitable nature of the underlying subject matter of the controversy); *Eluv Hldgs. (BVI) Ltd. v. Dotomi, LLC*, 2013 WL 1200273, at *5 (Del. Ch. Mar. 26, 2013) (concluding that declaratory judgment to establish share ownership was based on claim that was functionally equivalent to breach of contract, and that therefore statute of limitations applied by analogy).

[63] *See E. Shore Envtl., Inc. v. Kent Cty. Dep't of Planning*, 2002 WL 244690, at *4 (Del. Ch. Feb. 1, 2002) (finding equitable jurisdiction to issue declaratory judgment because ultimate remedy being sought was an injunction); *Highlights for Children*, 193 A.2d at 206 (finding equitable jurisdiction over claim for declaratory judgment that shares were invalid, because "the court must consider what plaintiff's complaint really seeks" beyond the face of the complaint). *See also Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586, 591 (Del. 1970) (noting that the Court of Chancery has jurisdiction "if there is any underlying basis for equity jurisdiction measured by traditional standards" and finding such a basis existed because "ultimate coercive relief would be injunctive").

31

upon the nature of Kraft's claim, I thus would conclude that the declaratory judgment sought here was a form of legal relief.  But I also will examine the fundamental essence of Kraft's declaratory judgment request, which resembles a request to cancel shares.[64]

In *Bush v. Hillman Land Company*, the Court of Chancery held that the cancellation of shares was a distinctly equitable remedy without legal analogue.[65] The plaintiff in *Bush* sought judicial cancellation of shares and certificates that allegedly had been issued illegally six years before suit was filed.[66]  The company argued that the claim was barred by a three-year statute of limitations on the theory that the claim fell within the Court's concurrent jurisdiction.[67]  The Court disagreed, concluding that the relief sought was equitable in nature:

> The law forum has no remedy whereby that result can be obtained. This suit is one where the non-existence of alleged stock is sought to be decreed and all appearance of its pretended existence obliterated. The fundamental concept lying at its foundation is equitable in nature and not within the scope of the law's notice.[68]

---

[64] *See supra* note 63.

[65] *Bush v. Hillman*, 2 A.2d at 135.

[66] *Id.* at 134.

[67] *Id.* ("The demurrants treat this case as one falling within the field of the concurrent jurisdiction of law and equity, and, so treating it, make the point that the complainants by choosing equity rather than law as the forum should not be permitted to escape the bar which the statute would impose had they brought their suit at law.").

[68] *Id.* at 135.

On that basis, the Court concluded that the statute of limitations did not apply and that the company's time-bar argument was governed by the doctrine of laches:

> There is then no remedy whatever at law, not to speak of an adequate remedy, to which the complainants can resort for invalidating the shares in question and obliterating the appearance of their existence as outstanding shares. The case, then, is not one where the act of limitations at law is applicable in equity.
>
> * * * * *
>
> My conclusion is that the case is not one where the statute of limitations is applicable. Any delay which has attended the institution of the suit, if it be such as to constitute a defense, is operative not by the uncompromising rule of the statute of limitations, but according as it gives rise or not to the principles that inhere in the equitable doctrine of laches.[69]

WisdomTree seeks to distinguish *Bush* on the ground that the plaintiff requested the cancellation of shares, rather than a declaratory judgment that the shares were void. Significantly, however, in a case none of the parties cited, this Court in *Highlights for Children* examined a request for a judgment declaring that certain shares were invalid because they allegedly were issued for no consideration in violation of the Delaware Constitution.[70]

---

[69] *Id.* at 136, 137. The Court ultimately deferred on deciding whether the claim was barred by laches so that a factual record could be developed. *Id.* at 137.

[70] *Highlights for Children*, 193 A.2d at 206.

The defendant in *Highlights for Children* argued that the Court of Chancery lacked subject matter jurisdiction because the controversy was not equitable in nature and was cognizable at law.[71]  Although the complaint demanded a declaratory judgment, the Court opined that equitable jurisdiction "is not now lost merely because the case is couched in terms of a declaratory judgment action" and noted that it "must consider what plaintiff's complaint really seeks."[72]  Citing *Bush*'s proposition that stock cancellation is fundamentally equitable in nature, Chancellor Seitz concluded that plaintiff's request for a declaratory judgment that the disputed shares were invalid fell within its equity jurisdiction.[73]  *Highlights for Children* thus suggests that, looking to the essence of Kraft's complaint, the requested declaratory relief would be equitable in nature.

The issue resolved in *Highlights for Children* was "not wholly free from doubt,"[74] and other cases underscore this ambiguity.  As discussed above, in *Reed v. Brady*, this Court determined that it was unable to hear a request for declaratory relief because the plaintiff was "simply asking for an interpretation of Delaware law" and was "neither seeking to vindicate an equitable right nor, in this context,

---

[71] *Id.*

[72] *Id.*  *See also supra* note 63.

[73] *See Highlights for Children*, 193 A.2d at 206.

[74] *Id.*

pursuing an equitable remedy."[75] Similarly, in *Reeder v. Wagner*, this Court found that it lacked subject matter jurisdiction over a declaratory judgment action because the claims involved statutory interpretation rather than an equitable issue.[76]

Although these cases suggest that the issue is less than certain, the case at hand bears substantial similarities to *Highlights for Children*, and the essence of Kraft's requested relief is functionally similar to an equitable cancellation of shares. Thus, looking to the remedy that Kraft "really seeks," I treat Kraft's requested relief as equitable in nature.

\* \* \* \* \*

Before discussing the consequence of my conclusion that Kraft's claim is legal and the relief Kraft seeks is equitable, I address two other arguments Kraft asserted based on the *Bush* decision. First, Kraft suggests that it would be improper to apply the statute of limitations here in any manner, based on the *Bush*

---

[75] *See Reed v. Brady*, 2002 WL 1402238, at \*2-4; *see also supra* note 58 and accompanying text.

[76] *See Reeder v. Wagner*, 2007 WL 3301026, at \*1 ("Because the complaint does not seek to vindicate an equitable right and does not demand an exclusively equitable remedy, this court lacks the power to adjudicate the dispute."). The Court in *Reeder* noted that the statutes at issue did not assign the task of statutory interpretation to the exclusive jurisdiction of the Court of Chancery. Here, the Court of Chancery indisputably has jurisdiction to interpret the DGCL under 8 *Del. C.* § 111(b).

Court's decision not to apply a statute of limitations to a claim for cancellation. I disagree.

Importantly, the holding in *Bush* to apply laches, and not to apply the statute of limitations by analogy, relied on Professor Pomeroy's view of concurrent jurisdiction circa 1938. That definition covered only legal claims seeking equitable remedies that were substantially similar to relief available at law.[77] As discussed above, the scope of concurrent jurisdiction has evolved since *Bush* was decided in 1938. At least insofar as time-bar principles are concerned, the Court no longer limits concurrent jurisdiction to include only legal actions seeking equitable remedies that *resemble legal ones*, but now also includes legal actions seeking *purely equitable* remedies.[78] Thus, the application of statutes of limitations by analogy has expanded over time. Put differently, although Kraft's action may have fallen outside of the Court's concurrent jurisdiction as defined when *Bush* was decided, it now falls within it and is subject to the application of

---

[77] *Bush v. Hillman*, 2 A.2d at 134 (describing Pomeroy's definition of concurrent jurisdiction). *See also* 1 Pomeroy, *supra* note 38, § 173 (explaining requirements for concurrent jurisdiction) ("The primary right . . . which is the foundation of the suit must be legal, or else the case would belong to the exclusive jurisdiction of equity . . . ."); *id.* § 137 (explaining that all cases in which the right is equitable and not legal fall within exclusive equity jurisdiction, regardless of the nature of the remedy); *id.* §§ 138-39 (noting that a *purely equitable* remedy for a legal right, such as specific performance of a contract, falls exclusively under equity jurisdiction, while a legal right seeking an equitable remedy that *closely resembles a legal remedy*, such as an equitable means of recovering money, falls under concurrent jurisdiction).

[78] *See supra* notes 38-39 and accompanying text.

statutes of limitation to concurrent jurisdiction claims. Under this Court's contemporary jurisprudence, furthermore, even if the claim had fallen entirely within this Court's equity jurisdiction, rather than concurrent jurisdiction, the Court would still apply the statute of limitations by analogy, though arguably with less strictness.[79]

Second Kraft suggests that, under *Bush*, the statute of limitations cannot apply because the shares are void, and "[t]he passage of time cannot resurrect a void transaction . . . ."[80] But this argument ignores the *Bush* Court's conclusion that laches could bar the claim even if a statute of limitations did not.[81] The issue was whether an analogous statute of limitations existed, not whether a claim that a transaction was void could never be time-barred. Kraft provides no authority for the proposition that a plaintiff cannot lose a claim to void a transaction based on delay, and *Bush* and other cases suggest otherwise.[82]

---

[79] *See supra* Part II.C.2.

[80] Pl.'s Ans. Br. 7.

[81] *See Bush v. Hillman*, 2 A.2d at 137 (noting that a successful laches defense was possible but deferring decision until the factual record was further developed).

[82] *See Beard v. Elster*, 160 A.2d 731, 739 (Del. 1960) (finding that shares invalidly issued for prohibited future consideration could later be validated by lapse of time and subsequent performance of the contracted consideration); *Frank v. Wilson & Co.*, 32 A.2d 277, 301 (Del. 1943) (noting that opportunity to invalidate a void corporate transaction converting class A shares into common shares could be lost due to ratification or laches); *Brown v. Fenimore*, 1977 WL 2566, at *2-3 (Del. Ch. Jan. 11, 1977) (noting

### 3.  An Analogous Limitations Period Applies to Kraft's Claim

Because I have found Kraft's claim to be legal and the relief Kraft seeks to be equitable, Kraft's action falls into this Court's concurrent jurisdiction, as it is now defined. For the reasons discussed above, therefore, if an applicable statute of limitations exists, I will apply it by analogy and give it presumptive effect absent tolling or extraordinary circumstances. Under 10 *Del. C.* § 8106, a three-year limitations period applies to actions "based on a statute." This statute of limitations thus applies by analogy to Kraft's claim, which is based on a statute (DGCL § 152) and a constitutional provision that goes hand-in-hand with the statute and is invoked for the same purpose.[83]

The three-year limitations period created by 10 *Del. C.* § 8106 begins to run from the time of the wrongful act, without regard for whether the plaintiff became aware of the wrongdoing at that time.[84] The allegedly wrongful stock issuance giving rise to Kraft's claim took place on May 4, 2000. This action was filed on

---

that share issuance for prohibited consideration was not necessarily *ultra vires* or unlawful, and that acquiescence in the transaction could bar a claim to invalidate shares).

[83] As discussed above, Kraft's complaint uses Article 9, Section 3 of the Delaware Constitution in the manner of a statute rather than arguing that its constitutional rights were violated.

[84] *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) ("This Court has repeatedly held that a cause of action 'accrues' under Section 8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action.").

March 20, 2015. Consequently, the statutory period expired almost twelve years before suit was filed.

Kraft has not made any tolling argument.[85]  Taking into consideration the factors identified in *IAC*, I find that this is not a case that "presents the rare circumstance where the analogous period of limitations ought not to be the measure of whether a litigant unreasonably delayed in commencing his action."[86] Kraft's claim exceeded the analogous statutory limitations period, and did so by *almost twelve years*.  Accordingly, Kraft's claim is barred by laches.

### E.    Tradeworx's Motion for Leave to Amend Would Be Futile

Tradeworx requests leave to amend its pleadings to add a cross-claim seeking a declaratory judgment that WisdomTree's purported shares in Tradeworx are void or voidable.  WisdomTree argues in opposition that the amendment would be futile because it would not survive a motion to dismiss under Court of Chancery Rule 12(b)(6).  I agree.

Tradeworx's declaratory judgment claim is similar to Kraft's, with a couple of additions.  Tradeworx and Kraft each request a declaration that WisdomTree's purported shares in Tradeworx are void because they purportedly were issued

---

[85] Tr. Oral Arg. at 53 (Dec. 15, 2015) ("We are not making a tolling argument.").

[86] *Levey*, 76 A.3d at 772.  The only one of the five factors identified in *IAC* that arguably applies here in my view is that, when this action was filed, the parties had a "bona fide dispute as to the validity of the claim." *IAC*, 26 A.3d at 178.

solely in exchange for future services. Tradeworx also requests in the alternative a declaration that the shares are voidable, and a determination of the number of shares WisdomTree owns, including as a result of any alleged anti-dilution rights.[87] For purposes of determining whether Tradeworx's claim also is barred by laches, the alternative request that the shares be declared *voidable* as opposed to *void* does not alter the analysis.[88]

Tradeworx's proposed cross-claim would be barred by laches for the same reasons I concluded that Kraft's claim is time-barred. If anything, the justification for laches applies even more forcefully for Tradeworx. Although Kraft alleges it was unaware of the original transaction by which WisdomTree acquired its shares, the same cannot be said about Tradeworx, which participated in and thus necessarily knew about the transaction from the outset.[89] Consequently, the statute of limitations would presumptively apply by analogy to Tradeworx's claim as well, and the claim would be barred by laches. For these reasons, Tradeworx's amendment would be futile.

---

[87] Mot. for Leave to Amend Ex. A at 7.

[88] I do not address Tradeworx's request that I make a determination relating to the alleged anti-dilution rights. Any potential disputes relating to the anti-dilution rights do not pertain to the question addressed in this action, namely whether the 1,045,000 shares originally issued to WisdomTree may be challenged as void or voidable. Nor have the parties briefed those issues.

[89] *See* Tr. Oral Arg. 61 (Dec. 15, 2015).

## III.  CONCLUSION

For the foregoing reasons, WisdomTree's motion to dismiss the complaint is GRANTED, and Tradeworx's motion for leave to amend its pleading is DENIED. The complaint is dismissed with prejudice.

**IT IS SO ORDERED**.