# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NICHOLAS KROLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2019-0969-KSJM |
| | ) | |
| CITY OF WILMINGTON, CITY OF | ) | |
| WILMINGTON POLICE | ) | |
| DEPARTMENT, and MICHAEL | ) | |
| PURZYCKI, Mayor of the City of | ) | |
| Wilmington, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: June 30, 2023
Date Decided: September 15, 2023

Robert C. McDonald, Adrienne M. McDonald, SILVERMAN McDONALD & FRIEDMAN, Wilmington, Delaware; *Counsel for Plaintiff Nicholas Kroll*.

Robert M. Goff, Jr., CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, Delaware; *Counsel for Defendants City of Wilmington, City of Wilmington Police Department, and Michael Purzycki*.

**McCORMICK, C.**

This action involves a dispute between the City of Wilmington (the "City") and Nicholas Kroll, a police officer terminated by the Wilmington Police Department (the "WPD") for an alleged violation of the residency requirement that the City imposed as a condition of his employment. According to the plaintiff, he complied with the residency requirement as it was written when he started working for the City, and for many years, there was no issue. But in 2017, the City updated its definition of residency and retroactively applied it to him. The plaintiff was not in compliance with the revised definition, so the WPD terminated him through a series of administrative proceedings. In addition to charging the plaintiff with violating the residency requirement, the WPD charged him with dishonesty for stating in paperwork that he complied with the residency requirement.

After initially attempting to appeal the WPD's decision through the certiorari process in the Superior Court, the plaintiff voluntarily withdrew the Superior Court action and filed this action. Here, he challenges the basis for his termination and seeks damages, declaratory judgment, and injunctive relief, including reinstatement. While this case was pending, this court held in a separate action brought by the Wilmington Fraternal Order of Police Lodge No. 1, Inc. (the "FOP") that the City violated the collective bargaining agreement by altering the definition of residency. This holding had the indirect effect of eliminating one basis for the plaintiff's termination—noncompliance with the residency requirement.

The defendants moved to dismiss this action for lack of subject matter jurisdiction and failure to state a claim, and the court granted the defendants' motions to dismiss for

lack of subject matter jurisdiction. The Delaware Supreme Court reversed and remanded on appeal, instructing the court to reconsider the subject matter jurisdiction arguments previously advanced by the parties. Message received. On remand, the court grappled with the parties' arguments by holding several telephonic hearings, requesting supplemental briefing, and conducting outside research to fill in the gaps.

Properly conceived, the defendants advance three arguments for why the plaintiff's requests for injunctive relief are insufficient to establish subject matter jurisdiction here. First, the defendants contend that the plaintiff has failed to adequately allege a basis for injunctive relief in the form of reinstatement because the dishonesty charge was an adequate and independent basis on which to terminate him. Second, they maintain that the plaintiff has an adequate remedy at law available to him in the Superior Court through the certiorari process. Third, they argue that the plaintiff has waived any further arguments in support of his jurisdictional theory by failing to plead them in the complaint. The court rejects these arguments and finds that the plaintiff has pled a basis for injunctive relief. Namely, the plaintiff has adequately alleged his request for reinstatement, which renders alternative resolution mechanisms like certiorari inadequate.

The parties' briefing raises interesting issues on the fault lines between this court's jurisdiction and the Superior Court's exclusive powers to review certain administrative decisions through the writ of certiorari. After raising these issues, however, the briefing did not offer much in the way of a resolution. And the answer is messy—there seems to be no clear rule for deciding whether certiorari presents an adequate remedy relative to

injunctive relief under circumstances like these. As such, the court has added independent research into its analysis, not to disregard the parties' arguments, but to do them full justice.

## I. FACTUAL BACKGROUND

On a Rule 12(b)(1) motion, parties may rely on documents outside of the complaint, which the court may look to in its discretion. The court draws upon those documents when noted. Otherwise, the facts are drawn from the Amended Verified Complaint for Declaratory Judgment and Injunctive Relief and the documents it incorporates by reference.[1]

The WPD hired the plaintiff as a full-time police officer in March 2013.[2] As a condition of employment, the plaintiff was required to establish and maintain a residence within the City for a period of at least sixty months.[3] To satisfy this requirement, he purchased a home within the City in July 2013.[4] In November 2014, he purchased a second home in Middletown to serve as the primary residence of his wife and children, because one of his children sought to benefit from the specialized educational programs of the Appoquinimink School District.[5]

To ensure compliance with the residency requirement, the City mandates that its police officers fill out a declaration of residency form annually. In April 2017, the City's

---

[1] C.A. No. 2019-0969-KSJM, Docket ("Dkt.") 7 ("Am. Compl.").

[2] *Id.* ¶ 15.

[3] *Id.* ¶ 16.

[4] *See id.* ¶ 17.

[5] *Id.* ¶¶ 18–19.

Human Resources department noticed inconsistencies in the plaintiff's 2015 and 2017 annual residency affidavits. According to the plaintiff, he transposed a house number on the 2015 affidavit and added a newly identified apartment number on the 2017 affidavit.[6]

In October 2017, the City's Administrative Board adopted a more restrictive definition of residence and altered its forms. Before October 2017, the form required officers to aver that their qualifying residence was where they "actually live."[7] After the October revision, however, the form required officers to prove that the qualifying residence was their "domicile," defined as their "true, fixed, and permanent home" and the place at which "[i]n the absence of a marital separation, . . . an employee's spouse and children, if any, reside."[8]

In November 2017, the plaintiff was notified by the WPD that his annual affidavits were the product of fraud and dishonesty in violation of the WPD's rules and regulations.[9] A disciplinary panel was convened, and the panel heard evidence on January 11, 2018.[10] During the disciplinary panel hearing, the City applied the residency definition adopted in October 2017, which required the plaintiff to live with his spouse and children to satisfy the residency requirement.[11]

---

[6] *Id.* ¶¶ 22–23.

[7] *Id.* ¶ 25.

[8] *Id.* ¶ 26.

[9] *Id.* ¶ 30.

[10] *Id.* ¶ 32.

[11] *Id.* ¶ 37.

4

The panel recommended terminating the plaintiff's employment.[12] An internal appeal held on April 11, 2018 affirmed that decision.[13] The plaintiff was terminated effective that date.[14]

The plaintiff filed an action in the Superior Court on December 18, 2018, which he stylized as a Notice of Appeal.[15] The City moved to dismiss on the basis that the plaintiff's Superior Court action was effectively a certiorari proceeding and that the plaintiff missed the accompanying 30-day deadline.[16] Before the Superior Court could rule on the motion, however, on October 24, 2019, the parties stipulated to dismissal.[17]

Meanwhile, in early 2018, the City police officers' exclusive bargaining representative, the FOP, filed a grievance challenging the City's modification of the definition of "residence" under the Police Officers and Firefighters' Employment Relations Act (the "Act").[18] The FOP pursued the action through the complex grievance procedure

---

[12] *Id.* ¶¶ 37–38.

[13] *Id.* ¶ 38.

[14] *Id.* ¶ 2.

[15] *See Nicholas Kroll v. City of Wilm. and Dep't of Police*, C.A. No. N18A-12-005 RRC, Dkt. 1 (Del. Super. Dec. 18, 2018) (Notice of Appeal).

[16] *See* C.A. No. N18A-12-005 RRC, Dkt. 13 (Del. Super. July 30, 2019); *see also, e.g.*, *Schafer v. Kent Cty. Dep't of Plan. Servs.*, 2023 WL 3750390, at *7 (Del. Super. May 31, 2023) ("Delaware courts have begun imposing a thirty-day requirement by analogy so as to mirror a typical (although far from uniform) statutory appeal period." (citations omitted)); *McIntosh v. City of Newark*, 2006 WL 1134894, at *1 (Del. Super. Mar. 31, 2006) ("The period of time for filing a Petition for a Writ of Certiorari has been set by decisions in this Court at 30 days." (citations omitted)).

[17] C.A. No. N18A-12-005 RRC, Dkt. 33 (stipulation of dismissal).

[18] Am. Compl. ¶¶ 39–40.

5

established by the Act and the collective bargaining agreement, ultimately obtaining an arbitrator's award sustaining its grievance.[19] The City filed suit in this court to vacate the arbitration award (the "FOP Action").[20] On January 22, 2021, the court resolved the parties' cross-dispositive motions in favor of the FOP.[21]

Meanwhile, the plaintiff filed this suit against the City and the WPD on December 4, 2019, seeking the following relief: a declaration that the defendants breached the collective bargaining agreement and violated the plaintiff's due process rights when it misapplied the definition of "residence" to him, resulting in his termination; an order preliminarily and permanently enjoining the defendants from taking any action against the plaintiff based on the erroneous definition of "residence"; an order reinstating the plaintiff to his position with the WPD; and damages in the amount of back pay, lost wages, pension allotments, and benefits for the period of his termination.[22]

Given the overlap with the FOP Action, this suit was stayed pending resolution of that action.[23] This case ultimately resumed. The defendants moved to dismiss the Amended Complaint under Court of Chancery Rules 12(b)(1) and 12(b)(6).[24] On August

---

[19] *Id.* ¶¶ 40–41.

[20] *City of Wilm. v. Wilm. Fraternal Order of Police Lodge No. 1, Inc.*, 2021 WL 11715655, at *1 (Del. Ch. Jan. 22, 2021).

[21] *Id.* at *14. The City did not appeal this decision. *See* C.A. No. 2019-0506-KSJM, Dkt.

[22] Dkt. 1 at 9–10.

[23] Dkt. 21.

[24] Dkt. 10 at 1.

16, 2021, the court granted the defendants' motion to dismiss.[25] On appeal, the Supreme Court reversed the dismissal decision and remanded the action.[26] The Supreme Court further held that this court should have the opportunity to address the defendants' alternative arguments for dismissal in the first instance.[27]

On remand, this court prompted the parties to identify their remaining legal arguments, which the defendants did by a letter dated September 14, 2022.[28] After grappling with the parties' positions, the court held a status conference on December 16, 2022, identifying the remaining issues and requesting supplemental briefing on topics that the court viewed as both critical and underdeveloped.[29] Supplemental briefing concluded on May 1, 2023.[30] The court held an additional status conference on June 30, 2023.[31]

## II. LEGAL ANALYSIS

A party may move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.[32] This court "will dismiss an action for want of subject matter jurisdiction 'if

---

[25] Dkt. 25.

[26] *Kroll v. City of Wilm.*, 276 A.3d 476, 479 (Del. 2022).

[27] *Id.*

[28] Dkt. 34 ("Sept. 14, 2022 Letter").

[29] Dkt. 36 ("Dec. 16, 2022 Hr'g Tr.").

[30] Dkt. 40 ("Defs.' Suppl. Opening Br."); Dkt. 41 ("Pl.'s Suppl. Answering Br."); Dkt. 42 ("Defs.' Suppl. Reply Br.").

[31] Dkt. 44.

[32] Ct. Ch. R. 12(b)(1).

it appears from the record that the Court does not have jurisdiction over the claim.'"[33]  In

considering a Rule 12(b)(1) motion, the Court "need not accept [the plaintiff's] factual

allegations as true and is free to consider facts not alleged in the complaint."[34]

This court has subject matter jurisdiction where a plaintiff states an equitable claim,

where a plaintiff seeks equitable relief in the absence of an adequate remedy at law, or

where the General Assembly has vested this court with jurisdiction by statute.[35]  Once

subject matter jurisdiction is established as to a portion of a complaint, the court may assert

jurisdiction over the other aspects of the complaint under the "clean-up doctrine."[36]

[33] *Medek v. Medek*, 2008 WL 4261017, at \*3 (Del. Ch. Sept. 10, 2008) (quoting *AFSCME Locs. 1102 & 320 v. City of Wilm.*, 858 A.2d 962, 965 (Del. Ch. 2004)).

[34] *Appriva S'holder Litig. Co., LLC v. ev3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) (citation omitted); *see also Nelson v. Russo*, 844 A.2d 301, 302–03 (Del. 2004) ("In deciding whether the [trial] Court has subject matter jurisdiction, however, we must look beyond the language in the complaint . . . ." (citing *Diebold Computer Leas., Inc. v. Com. Credit Corp.*, 267 A.2d 586, 588 (Del. 1970)).

[35] *Mock v. Div. of State Police, Dep't of Safety and Homeland Sec.*, 2022 WL 1744439, at \*5 (Del. Ch. May 31, 2022); *see also Del. Bldg. & Constr. Trades Council, AFL-CIO v. Univ. of Del.*, 2014 WL 2218730, at \*1 (Del. Ch. May 29, 2014) ("The Court of Chancery is a court of limited jurisdiction, and can acquire subject matter jurisdiction over a case in three ways: (1) the invocation of an equitable right; (2) the request for an equitable remedy when there is no adequate remedy at law; or (3) a statutory delegation of subject matter jurisdiction." (internal quotation marks and citation omitted)).

[36] *See Organovo Hldgs., Inc. v. Dimitrov*, 162 A.3d 102, 113 (Del. Ch. 2017) ("[T]he clean-up doctrine provides that if this court would have equitable jurisdiction over a part of a controversy, then it can address the remaining portions of the controversy as well."); *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016) (stating that the clean-up doctrine "provides the Court of Chancery with jurisdiction to resolve purely legal causes of action that are before it as part of the same controversy over which the Court originally had subject matter jurisdiction in order to avoid piecemeal litigation" (citation omitted)).

The plaintiff argues that the court has subject matter jurisdiction over this case because he seeks equitable remedies. Of the plaintiff's four categories of requested relief, the plaintiff relies on two for subject matter jurisdiction: his request for preliminary and permanent injunctive relief foreclosing the City from applying the erroneous definition of "residence" to him (the "Residency Requirement Injunction") and his request to be reinstated (the "Reinstatement Injunction").[37]

Injunctive relief is a form of equitable relief that, if properly asserted, gives rise to equitable jurisdiction.[38] "[W]hat matters is whether there is a basis for equity to act, namely the absence of an adequate remedy at law."[39] When evaluating whether a request for injunctive relief gives rise to equitable jurisdiction, the court looks at the substance and not

---

[37] It bears noting that the plaintiff's request for declaratory relief does not give rise to subject matter jurisdiction because declaratory judgment is available in other Delaware courts for actions properly within their jurisdiction. 10 *Del. C.* § 6501. That is, this court has jurisdiction in a declaratory judgment action only "if there is an underlying basis for equity jurisdiction measured by traditional standards." *Abbott v. Vavala*, 2022 WL 3642947, at *5 (Del. Aug. 22, 2022) (internal quotation marks and citations omitted); *see also id.* (holding that because the "request for injunctive relief did not confer jurisdiction on the Court of Chancery in this case, the court also lacked jurisdiction over [the] request for a declaratory judgment"). Nonetheless, the court may hear claims for declaratory relief under the clean-up doctrine as long as the complaint establishes an independent basis for jurisdiction. *See Kraft*, 145 A.3d at 974. The plaintiff's subject matter jurisdiction arguments thus rise or fall with his request for equitable relief.

[38] *See Kraft*, 145 A.3d at 985; *E. Shore Env't, Inc. v. Kent Cty. Dep't of Planning*, 2002 WL 244690, at *4 (Del. Ch. Feb. 1, 2002).

[39] *In re COVID-Related Restrictions on Religious Servs.*, 285 A.3d 1205, 1230 (Del. Ch. 2022); *see also Richard Paul, Inc. v. Union Improvement Co.*, 91 A.2d 49, 54 (Del. 1952) ("We think the case presents a proper situation for equitable relief, viz., the unwarranted invasion of a legal right for which there is no adequate remedy at law.").

9

the mere form of the claims.[40]  This precludes the court from asserting jurisdiction based on "the incantation of magic words."[41]  "If a realistic evaluation leads to the conclusion that an adequate legal remedy is available, this court . . . will not accept jurisdiction over the matter."[42]

"A practical analysis of the adequacy of any legal remedy, then, must be the point of departure for each matter which comes before this Court."[43]  "To be adequate, a legal remedy must be available as a matter of right, be full, fair and complete, and be as practical to the ends of justice and to prompt administration as the remedy in equity."[44]

In that vein, "[a]n injunction improperly seeking to preclude a theoretical future wrong cannot anchor subject matter jurisdiction in this Court."[45]  "For forward-looking relief to be warranted, the plaintiff must establish a reasonable apprehension of a future wrong."[46]  "An unsupported, subject[ive] concern about a future harm is insufficient to

---

[40] *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) ("In deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim." (citations omitted)).

[41] *Organovo Hldgs., Inc.*, 162 A.3d at 113 (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987)).

[42] *McMahon*, 532 A.2d at 603.

[43] *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991).

[44] *United BioSource LLC v. Bracket Hldg. Corp.*, 2017 WL 2256618, at *4 (Del. Ch. May 23, 2017) (internal quotation marks and citation omitted).

[45] *Mock*, 2022 WL 1744439, at *10 (citing *Crown Castle Fiber LLC v. City of Wilm.*, 2021 WL 2838425, at *6 (Del. Ch. July 8, 2021)).

[46] *Organovo Hldgs., Inc.*, 162 A.3d at 115 (internal quotation marks and citation omitted).

meet this test."[47] "Put differently, equity will not issue an injunction merely to allay fears or apprehensions absent some showing that the wrongs complained of are likely to be continued unless restrained."[48]

To defeat the plaintiff's claim to subject matter jurisdiction, the defendants advance three arguments, discussed in turn below.

## A. The Plaintiff Has Adequately Alleged His Request For Injunctive Relief.

The defendants argue that the plaintiff has not adequately pled bases for the Residency Requirement Injunction or the Reinstatement Injunction, preventing each from supporting jurisdiction.

### 1. The Residency Requirement Injunction

With the Residency Requirement Injunction, the plaintiff requests that the court enjoin the Defendants from taking any action, based on the October 2017 modified definition of residence.[49] The defendants argue that the Residency Requirement Injunction "seeks to enjoin that which has already occurred," and in any event functions as an impermissible obey-the-law injunction to a government agency.[50]

As stated above, "[a]n injunction improperly seeking to preclude a theoretical future wrong cannot anchor subject matter jurisdiction in this Court."[51] Forward-looking relief

---

[47] *In re COVID*, 285 A.2d at 1233.

[48] *Id.* (internal quotation marks and citation omitted).

[49] *See* Am. Compl. at 10.

[50] *See* Sept. 14, 2022 Letter at 2 (citations omitted).

[51] *Mock*, 2022 WL 1744439, at *10 (citation omitted).

11

requires a "reasonable apprehension of a future wrong."[52]  One way to show future harm is to show a "threat of continuing harm in the future for which an injunction could issue."[53]

A plaintiff faces unique obstacles when seeking an injunction against government agencies or officials.  "[T]he court cannot assume noncompliance by a government agency as the basis for a reasonable apprehension of a future wrong."[54]  For this reason, "[p]rospective injunctive relief is generally unavailable where the plaintiff's proposed injunction merely seeks to prospectively compel a government to conform with the interpretation of the law reflected in [a separately] proposed declaratory judgment."[55]  As this court summarized in *Christiana Town Center, LLC v. New Castle County*:

> It would be anathema to our form of government to believe, as a baseline principle, that after a court renders a declaratory judgment another governmental agency would not follow that decision. It may actually be the case that a particular agency does not follow such a judgment, but a party should only seek

---

[52] *Organovo Hldgs., Inc.*, 162 A.3d at 115 (citation omitted); *see also In re COVID*, 285 A.3d at 1210 ("[W]hen a plaintiff seeks to ground jurisdiction in a court of equity based on the potential need for a permanent injunction, the pled facts must support a reasonable apprehension that the defendant will act in a manner that will necessitate the injunction's issuance.").

[53] *Hamby v. Richard L. Sapp Farms, LLC*, 2021 WL 4429855, at *4 (Del. Ch. Sept. 27, 2021), *adopting report and recommendation*, 2021 WL 4789092 (Del. Ch. Oct. 13, 2021); *see, e.g.*, *Gordon v. Nat'l R.R. Passenger Corp.*, 1997 WL 298320, at *7 (Del. Ch. Mar. 19, 1997) (applying the concepts of "continuing harm" or "continuing trespass" in the context of a nuisance claim).

[54] *Crown Castle Fiber LLC*, 2021 WL 2838425, at *5.

[55] *Id.*; *see also In re COVID*, 285 A.3d at 1233.

injunctive relief if that agency *actually* refuses to comply with the judicial declaration.[56]

Thus, where alternative review mechanisms like declaratory judgment or certiorari are available, this court will often presume that an injunction is unnecessary to compel the government to obey.[57] That said, a plaintiff can receive an injunction against a government agency that refuses to comply with a judicial declaration: "[w]here there is a real chance that relief will not be forthcoming absent [an] injunction"; "[w]here the right requires a remedy bespoke to the facts"; or "[w]here an ongoing deprivation of rights needs a remedy by interim relief."[58]

The Residency Requirement Injunction seems to presuppose a world in which the plaintiff has already been reinstated. In such a world, there is no basis to believe that the City would continue to enforce the modified definition generally or specifically against the plaintiff. Put simply, it is hard to imagine the City making the effort to reinstate the plaintiff, only to then bring a second set of residency-related charges against him re-

---

[56] 2003 WL 21314499, at *4 n.19 (Del. Ch. June 6, 2003) (emphasis in original), *aff'd*, 841 A.2d 307 (Del. 2004) (TABLE); *see also Gladney v. City of Wilm.*, 2011 WL 6016048, at *4 (Del. Ch. Nov. 30, 2011) ("The Courts of this State understandably *presume* that governmental agencies and actors will follow the law." (emphasis in original) (citation omitted)).

[57] *See Delta Eta Corp. v. City of Newark*, 2023 WL 2982180, at *16–17 (Del. Ch. Feb. 2, 2023) (finding that an injunction was not warranted in part because the plaintiff had "not demonstrated that an injunction is necessary to enforce a declaratory judgment" against the government defendants, citing the general judicial presumption "that a defendant will comply with a declaratory judgment" and noting that "this presumption is even stronger when the defendant is a government entity" (citations omitted)).

[58] *Birney v. Del. Dep't of Safety and Homeland Sec.*, 2022 WL 16955159, at *2 (Del. Ch. Nov. 16, 2022).

litigating the same issues. And because the harm against which the plaintiff seeks protection is speculative, the Residency Requirement Injunction may not serve as a basis for this court to assert subject matter jurisdiction.

*In re COVID-Related Restrictions on Religious Services* is instructive.[59] There, two religious leaders challenged COVID-19-related restrictions the governor imposed on houses of worship during the pandemic on a range of constitutional grounds. They sought a permanent injunction against various health-related restrictions, including restrictions on in-person religious worship, how speech from the pulpit should occur, how baptisms should be performed, and the like.[60] The plaintiffs based subject matter jurisdiction on their request for injunctive relief.[61] By the time the plaintiffs brought suit, however, the Governor had already removed the restrictions that they sought to challenge.[62]

The court held that it lacked subject matter jurisdiction because the plaintiffs had not established a reasonable apprehension of a future harm. The court observed: (1) that the "continuing reality of life under COVID-19 is not a sufficient consideration"; (2) that the plaintiffs could litigate their constitutional challenges to the past order in a court of law by seeking a declaratory judgment; and (3) that the Governor had entered into a separate agreement not to reimpose restrictions that "specifically target Houses of Worship."[63]

---

[59] 285 A.3d 1205.

[60] *Id.* at 1221–22.

[61] *Id.* at 1224 ("The plaintiffs ground the existence of equitable jurisdiction on their request for a permanent injunction.").

[62] *Id.* at 1222.

[63] *Id.* at 1233–35.

14

Although it was "theoretically possible" that the Governor could "impose something akin to the Challenged Restrictions," the court found it "not sufficiently likely," and thus insufficient to invoke equitable jurisdiction.[64]

Similarly, here, it is theoretically possible that the City would reinstate the plaintiff only to harass him with continued disciplinary charges, but that outcome is not sufficiently likely. For this reason, the plaintiff's Residency Requirement Injunction does not serve as a basis for subject matter jurisdiction.

### 2. The Reinstatement Injunction

The defendants next contend that the Reinstatement Injunction does not give rise to jurisdiction, arguing that any mandatory injunction would not require the City to reinstate the plaintiff.[65] The defendants concede that if the request for the Reinstatement Injunction is adequately alleged, then this court has equitable jurisdiction over the complaint.[66] The defendants argue, however, that the plaintiff fails to allege a basis for the Reinstatement Injunction because the City terminated the plaintiff for the independent reason that he was dishonest. Specifically, the defendants argue that the hearing board found, and the appellate board affirmed, that the plaintiff "falsely stated in an interview with [WPD's Office of Professional Standards ("OPS")] that he stayed in Wilmington during certain

---

[64] *Id.* at 1235.

[65] *See* Dkt. 15 ("Defs.' Opening Br.") at 12–13.

[66] Dec. 16, 2022 Hr'g Tr. at 9:1–24 (counsel for the defendants stating that the subject matter jurisdiction analysis "brings in and mirrors" the defendants' argument that the claims for injunctive relief are not well-pled, and that the argument on the merits is "subsumed" within the subject matter jurisdiction inquiry in this case).

work shifts when, in fact, surveillance of [the plaintiff] demonstrated that he was at his Middletown property."[67]

In supplemental briefing, the plaintiff responded that the charge of dishonesty was inextricably intertwined with the residency issue. He pointed out that the City charged the plaintiff with dishonesty before the plaintiff was interviewed, so the charge could not relate to statements the plaintiff made during that interview.[68] He also pointed to OPS's Investigative Report dated November 27, 2017, in which Master Sergeant Fray Lynch stated that the plaintiff had acted dishonestly by "document[ing] his address as 3203 West 2nd Street on the annual residency form and sign[ing] the annual residency declaration form from 2013 to present acknowledging that the address of 3203 W 2nd St. is his primary residence."[69] The plaintiff therefore reasons that the dishonesty charge is ancillary to the residency requirement.[70]

---

[67] Defs.' Opening Br. at 12; *see also* Dkt. 19 ("Defs.' Reply Br.") at 4–5; C.A. No. 266, 2021, Dkt. 18 ("Defs.' Appellate Br.") at 28–29 (citing the OPS's findings and results at 8). The OPS's findings and results document is attached to the plaintiff's supplemental answering brief as Exhibit D. Dkt. 41, Ex. D.

[68] Pl.'s Suppl. Answering Br. at 17 (citing Dkt. 41, Ex. H ("Notification of Complaint") at 1). The complaint was received on May 2, 2017, and the plaintiff was notified of the complaint on May 31, 2017. Notification of Complaint at 1. The complaint stated that the plaintiff "ha[d] failed to comply with the employment residency requirement of the Wilmington City Charter," and thus was being investigated for violating the residency requirement and dishonesty. *Id.* The plaintiff was interviewed by OPS on June 9, 2017. Dkt. 41, Ex. I ("OPS Investigative Report") at 3.

[69] Pl.'s Suppl. Answering Br. at 18 (quoting OPS Investigative Report at 6).

[70] *See Id.* at 11–12.

16

The defendants' argument effectively imports the Rule 12(b)(6) standard into this jurisdictional analysis by disputing the sufficiency of the plaintiff's allegation.[71] Drawing all reasonable inferences from the facts alleged, however, it is reasonably conceivable that the dishonesty charge was in fact inextricably intertwined with the residency charge.

Although the defendants cast this point in terms of a Rule 12(b)(6) argument, they draw upon facts beyond the pleadings for support, and the plaintiff followed suit. Even looking beyond the pleadings, the plaintiff prevails. It is unclear, at this stage, whether the City inferred dishonesty from the plaintiff's bare averment that 3202 West 2nd Street was his residence—a statement that might simply have been made from confusion over which residency definition was supposed to apply to him. And although it may prove true, as the defendants contend, that the plaintiff lied during the investigation itself, it also seems that the dishonesty charge preceded that investigation. In all events, the plaintiff adequately alleged that the City originally charged him with dishonesty because of the address he listed as his residence.

The defendants concede that if the Reinstatement Injunction is adequately alleged, then this court has subject matter jurisdiction.[72] Based on this concession, the analysis could end here.

---

[71] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (establishing reasonable conceivability as the pleading standard).

[72] The defendants did not challenge the plaintiff's standing to sue under the collective bargaining agreement, and this decision does not address that issue. *See Meades v. Wilm. Housing Auth.*, 2003 WL 939863, at *3 (Del. Ch. Mar. 6, 2003) ("Because [the plaintiff] was not a party to the [collective bargaining agreement] or to the arbitration, he has no

But adequately alleging a basis for injunctive relief against a government agency, standing alone, is not enough to open the doors to this court. That is so because, as discussed above, government agencies are presumed to obey the law unless there is "a real chance that [the plaintiff's requested] relief will not be forthcoming absent [an] injunction."[73] That showing is satisfied as to the Reinstatement Injunction.

In the FOP Action, this court upheld an arbitration award that found the revised definition of residency "materially altered" the collective bargaining agreement between the City and the FOP, thus "constitut[ing] a unilateral alteration to the conditions of employment" in violation of the agreement.[74] The collateral effect of this decision was that the City could not rely on the modified definition of residency as a basis to terminate the plaintiff. Despite this knock-on effect, the City has not budged in its position. In this rare circumstance, at least as pled, the court cannot conclude that a declaratory judgment or certiorari review concerning the residency requirement would suffice.

The plaintiff's request for the Reinstatement Injunction thus facially meets the hurdles of Rule 12(b)(1). To the extent the defendants press their Rule 12(b)(6) motion, the complaint adequately alleges the request for the Reinstatement Injunction.

---

standing to challenge the arbitration award, unless an independent basis for conferring standing can be found.").

[73] *Birney*, 2022 WL 16955159, at *2.

[74] *Wilm. Fraternal Order of Police Lodge No. 1, Inc.*, 2021 WL 11715655, at *5, 13–14 (citing the arbitrator's opinion and award).

## B. The Defendants' Certiorari Argument

The defendants argue that the plaintiff has an adequate legal remedy available in the form of a certiorari proceeding in the Superior Court.[75] The plaintiff cannot dispute that certiorari is available to him; indeed, before bringing this suit, the plaintiff petitioned for a writ of certiorari in the Superior Court.[76] The plaintiff argues, however, that the availability of a writ of certiorari in the Superior Court does not, standing alone, eliminate the potential for equitable jurisdiction.

The Delaware Code confers exclusive jurisdiction upon the Superior Court to "frame and issue all remedial writs, including . . . certiorari" and provides that writs "shall be granted of course."[77] As this court stated in *Gladney v. City of Wilmington*,

> The writ of *certiorari* is a writ of error that lies from the Superior Court to an inferior tribunal to review errors of law. It is available where an aggrieved party has no right of appeal from an adverse decision of an administrative body. Exclusive jurisdiction to issue the writ is reserved to the Superior Court.[78]

---

[75] Sept. 14, 2022 Letter at 2.

[76] *See* C.A. No. N18A-12-005 RRC, Dkt. 1. Although stylized as an appeal, the lack of a direct right of appeal under the Law Enforcement Officers' Bill of Rights warrants treating the plaintiff's initial action in the Superior Court as a petition for a writ. *See generally* 11 *Del. C.* §§ 9200–9209. The writ that is the closest logical fit, as discussed below, is certiorari.

[77] 10 *Del. C.* § 562.

[78] 2011 WL 6016048, at *5 (cleaned up).

"Under principles of law well established in this State, certiorari involves a review of only such errors [that] appear on the face of the record being considered."[79] In light of the restrictive scope of certiorari review, the Superior Court "will 'not consider the merits of the case. It considers only those issues historically considered at common law; namely, whether the lower tribunal (1) committed errors of law, (2) exceeded its jurisdiction, or (3) proceeded irregularly.'"[80] It is the limited scope of certiorari proceedings, presumably, that makes that option more appealing to the defendants. Alternatively, the defendants may wish to have the case sent back to the Superior Court to argue that the plaintiff missed the deadline for certiorari.[81]

In a limited respect, certiorari functions like an equitable remedy. The writ of certiorari may issue only where an appellant has no other "adequate remedy at law."[82]

---

[79] *Castner v. State*, 311 A.2d 858, 858 (Del. 1973) (citations omitted); *see also Mell v. New Castle Cty.*, 2003 WL 1919331, at *8 (Del. Ch. Apr. 11, 2003) ("The writ of *certiorari* is a writ of error. The writ lies from the Superior Court to inferior tribunals, such as a county council, to review proceedings that determine legal rights and are capable of legal error. The writ exists to review only errors of law, not errors of fact. The review is confined to the record, and the Court must not re-decide the merits of the case." (citing 1 Victor B. Woolley, *Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware* §§ 895–897 (1906) [hereinafter, "*Woolley*"]).

[80] *Haden v. Bethany Beach Police Dep't*, 2014 WL 2964081, at *7 (Del. Super. June 30, 2014) (quoting *Maddrey v. Just. of the Peace Ct. 13*, 956 A.2d 1204, 1213 (Del. 2008)).

[81] *See* C.A. No. N18A-12-005 RRC, Dkt. 13 ¶¶ 5–6 (Del. Super. July 30, 2019) (defendants' motion to dismiss plaintiff's administrative appeal on the basis that it is a *de facto* certiorari petition falling outside certiorari's 30-day deadline).

[82] *See, e.g.*, *Delta Eta Corp.*, 2023 WL 2982180, at *10 ("A writ of certiorari is available only where . . . there is no other adequate remedy at law." (citing *In re Petition of Howell*, 2007 WL 1114123, at *1 (Del. 2007)); *Goldstein v. Mun. Ct. for City of Wilm.*, 1991 WL 53830, at *11 (Del. Super. Jan. 7, 1991) ("Delaware has established four criteria for the

20

According to one source, certiorari's remedy-of-last-resort function emerged in the United States because American courts typically have discretion on whether to issue the writ.[83] But even in Delaware, where the writ of certiorari "shall be granted of course"[84] rather than through judicial discretion, courts look to the adequacy of competing remedies. This is similar to the standard for awarding equitable remedies.

Yet one difference (among many) between equitable relief and certiorari is that the Court of Chancery may not generally invoke its equitable jurisdiction to collaterally review

---

review of constitutional issues on a Writ of Certiorari: (1) the act of the lower tribunal must be final; (2) there must be no right of appeal, (3) a question of grave public policy and interest must be involved; and (4) there must be no other basis for review available." (citing *Shoemaker v. State*, 375 A.2d 431, 438 (Del. 1977), 375 A.2d at 438; *Becker v. State*, 185 A. 92, 96 (Del. Super 1936), *overruled on other grounds*, *Downs v. Jacobs*, 272 A.2d 706 (Del. 1970))); *Maddrey*, 956 A.2d at 1213 (stating that, for the Superior Court to review a lower tribunal's decision on certiorari, "the judgment must be final and there can be no other available basis for review" (citing *In re Butler*, 609 A.2d 1080, 1081 (Del.1992); *Woollley* § 895)); *see also In re Pet. of Howell*, 925 A.2d 503, 2007 WL 1114123, at *1 (Del. 2007) (TABLE) (denying certiorari to the Supreme Court because a direct right of appeal was available).

[83] Frank J. Goodnow, *The Writ of Certiorari*, 6 Pol. Sci. Q. 493, 501–02 (Sept. 1891) [hereinafter, "*Certiorari*"]. Other jurists and secondary sources have discussed more comprehensively the development of the writ of certiorari in Anglo-American law, its complex relationship with equitable jurisdiction, and the role of equity generally. *See generally Delta Eta Corp.*, 2023 WL 2982180; *see also Woolley* §§ 894–896, at 623–25; William T. Quillen, Michael Hanrahan, *A Short History of the Delaware Court of Chancery—1792-1992*, 18 Del. J. Corp. L. 819 (1993); *XRI Inv. Hldgs. LLC v. Holifield*, 283 A.3d 581 (Del. Ch. 2022), *rev'd on other grounds*, --- A.3d ---, 2023 WL 5761367 (Del. Sept. 7, 2023). This jurist has nothing to add to these recitations and refers persons to those sources for greater detail.

[84] 10 *Del. C.* § 562.

other tribunals' judgments.[85]  By contrast, the whole point of certiorari is that the Superior Court may reverse a lower tribunal's decision.  So, one can view injunctive relief and certiorari as serving parallel remedy-of-last-resort functions, but in markedly different contexts.[86]

The traditionally parallel tracks on which certiorari and injunctive relief run converge in the context of administrative proceedings.  Going back to at least the early 20th century, the Superior Court has used writs of certiorari to review decisions not only of inferior tribunals, but also of administrative officials and local legislatures.[87]  As long as

---

[85] *See, e.g.*, *Troy Corp. v. Schoon*, 959 A.2d 1130, 1133–34 (Del. Ch. 2008); *Briddell v. Hanuschak*, 2015 WL 3649591, at *3 (Del. Ch. June 12, 2015) (explaining the conditions under which collateral estoppel prevents persons from relitigating decided issues after a final judgment has been rendered); *but see* Henry L. McClintock, *McClintock on Equity* §§ 169–175, at 456–79 (2d ed. 1948) [hereinafter, "*McClintock*"] (describing how, traditionally, courts of equity retained jurisdiction to stay or overrule contrary decisions in other courts in order to preserve their jurisdiction, enjoin judgments obtained by fraud, and in other narrow scenarios).

[86] There are similar parallels to other writs, such as the writ of prohibition, which also performs a similar review-of-last-resort function.  *See Mell*, 2003 WL 1919331, at *8 ("Superior Court may issue a writ of prohibition when there is no other adequate remedy.  The purpose of this writ is to prevent an inferior tribunal or agency from acting when it lacks the authority or jurisdiction to act." (citation omitted)).  The court focuses on certiorari in part to avoid opening a can of writ-related worms.

[87] *See Woolley* § 896 at 624–25 ("[T]he scope of the remedy [of certiorari] is in no sense limited to [review of justices of the peace], but extends to and embraces other inferior legal tribunals having the power to determine legal rights and being capable of committing legal error.  Thus the writ lies to the judgments of The Municipal Court of the City of Wilmington; likewise to review the proceedings of commissioners appointed for the condemnation of land, and in certain cases to review the proceedings of town councils." (citations omitted)).  Other jurisdictions have used the writ of certiorari to review decisions of municipal councils and local commissioners since the 19th century.  *See Certiorari* at 513.  Legal historians may wish to dig deeper into the origins of this practice in Delaware, but it is not relevant for present purposes.

22

a legislature or administrative agency (i) acts in "quasi-judicial capacity" where there is neither (ii) a "right to appeal" nor (iii) an adequate remedy at law, a person may seek certiorari to review that decision.[88] A governmental "entity acts in a quasi-judicial capacity where it applies existing laws to a set of facts before it."[89]

Thus, certiorari has become an avenue for judicial review of administrative issues—ranging from topics such as land use[90] to employment disputes between local governments and employees.[91] But injunctive relief has also emerged as a check on government action where other remedies such as damages would be inadequate.[92] An injunction might be necessary to enjoin an official's prospective "violation of a plain official duty"[93] or where there is a "reasonable apprehension" that a government official "will act in a manner that will necessitate the injunction's issuance."[94] Similar doctrines have emerged in the federal system from the early 20th century, allowing federal courts to issue injunctions that prevent executive officials from violating persons' constitutional rights.[95] Courts have also

---

[88] *Delta Eta*, 2023 WL 2982180, at *10 (citations omitted).

[89] *Id.* at *11 (citations omitted).

[90] *See id.* at *11–19 (collecting cases in the context of special use permit challenges); *see also, e.g.*, *Schafer*, 2023 WL 3750390, at *6–10 (allowing leave for motion to amend an administrative appeal to request a writ of certiorari regarding the Kent County Department of Planning Services' decision to approve a subdivision application).

[91] *See, e.g.*, *State, Office of Mgmt. and Budget v. Public Empl. Rels. Bd.*, 2011 WL 1205248, at *1 (Del. Super. Mar. 29, 2011).

[92] *See generally In re COVID*, 285 A.3d at 1228–29.

[93] 4 *Pomeroy's Equity Jurisprudence* § 1744, at 4050 (4th ed.) [hereinafter, "*Pomeroy*"].

[94] *In re COVID*, 285 A.3d at 1210.

[95] *See generally Ex Parte Young*, 209 U.S. 123, 163–68 (1908).

invoked equitable powers to intervene in administrative decision-making where there is a "clear abuse of discretion."[96]

The apparent availability of certiorari and injunctive relief as dueling review mechanisms of last resort for administrative decisions raises a complicated jurisdictional analysis for the Court of Chancery.

For instance, in *Mell v. New Castle County*, taxpayers sued the New Castle County government in the Court of Chancery to enjoin it from paying local politicians' attorneys' fees in connection with federal investigations.[97] The politicians were under federal investigation in connection with their use of government employees and office space for work on their primary election campaigns.[98] New Castle County Code established a process letting officials request reimbursement of legal fees through the County Attorney's office for such investigations based on a five-factor balancing test, which under certain circumstances was subject to review of the County Council.[99] The Court of Chancery

---

[96] *Pomeroy* § 1751, at 4065; *see also McClintock* § 174 at 474–75

> Courts of equity have never manifested the same hesitancy with respect to injunctions which interfere with proceedings before administrative officers or tribunals that they have with respect to injunctions as to judicial proceedings. An injunction will issue against administrative orders or proceedings wherever the plaintiff has a legal right which is adversely affected by the proceedings and there is no adequate remedy at law, or otherwise prescribed by statute.

(citations omitted).

[97] 2003 WL 1919331, at *1–2.

[98] *Id.*

[99] *See id.* at *5–6.

declined to rule on whether to enjoin the County from paying the defendants' legal fees, reasoning that the County Attorney had "yet to make a determination as to whether legal representation at County expense would be proper."[100]

The court then assessed whether it would have jurisdiction over the ultimate resolution of the case. After canvassing authority on various writs and concluding that none were adequate, the court found it had subject matter jurisdiction because the only remedy remaining for the plaintiffs was an injunction.[101] The court reasoned that certiorari was inadequate because "the determinations made by the County Attorney" or County Council on appeal "rest solely on the specific facts of each case."[102] Because the writ would not allow review of factual errors, the court viewed certiorari as "ineffectual" for whatever challenges the plaintiff would bring.[103] Although the *Mell* court did not state it outright, it seemed to view certiorari as an available remedy—just not one that was adequate in light of what the plaintiffs sought relative to the administrative review mechanism at issue. *Mell* thus illustrates the highly fact-intensive nature of the adequate remedy inquiry, especially when deployed to assess the utility of certiorari relative to injunctive relief.

---

[100] *Id.* at *7. Nonetheless, the court granted a permanent injunction barring the defendants from using government office space to prepare their defense, requiring that these activities be conducted "off-site and outside work hours." *See id.* at *5.

[101] *Id.* at *7–9.

[102] *Id.* at *8.

[103] *Id.*

Even where the court has found itself devoid of subject matter jurisdiction because certiorari was available, it has avoided announcing a categorical rule to that effect and has always paid special attention to the relief sought by the plaintiff.

- In *Delta Eta Corporation v. City of Newark*, the Court of Chancery held that certiorari was adequate to review a city council's denial of a special use permit to a fraternity house.[104] The court reasoned that approving or denying a special use permit application was a quasi-judicial act because the availability of such a permit to applicants was "circumscribed by ordinance," and so certiorari was available.[105] The fraternity house argued that certiorari was inadequate because it preferred "a proceeding supported by discovery and applying a more lenient standard of review."[106] The court reasoned that the fraternity house had merely "point[ed] out that the certiorari standard of review is different" from equitable review, but failed also to "demonstrate that the standard is so limited in scope as to be incapable of affording full and fair relief."[107]

- In *Gladney v. City of Wilmington*, a legislative assistant sued the City in the Court of Chancery on the basis that she had been wrongfully terminated for failing to comply with the City's residency requirement.[108] The legislative assistant sought a permanent injunction "enjoining the City from denying her employment with the City because of her failure to comply with the residency requirement."[109] The court reasoned that the legislative assistant's requested injunction failed to establish equitable jurisdiction because it "s[ought] only to enjoin the City from denying" her "employment on the ground that she failed to comply with the City's residency requirement" and "would not require the City to reinstate" her.[110] The court reasoned that certiorari would be an adequate remedy instead, because the relief she sought

---

[104] 2023 WL 2982180, at *14–15.

[105] *Id.* at *13 (citations omitted).

[106] *Id.* at *14.

[107] *Id.* at *16 (citations omitted).

[108] 2011 WL 6016048, at *1.

[109] *Id.* at *2.

[110] *Id.* at *4.

"effectively amounts to an appeal" of her dismissal "or, alternatively, a wrongful termination claim for damages against the City."[111]

- In *Christiana Town Center, LLC v. New Castle County*, a developer sought to enjoin the New Castle County government from applying an "unclean hands" provision of the local code against the developer's application for a permit to perform finishing work and improvements on a building.[112] The court *sua sponte* found itself lacking jurisdiction. The court reasoned that all the plaintiff "realistically" sought was a "declaratory judgment as to the meaning and scope" of the relevant code provisions.[113] The court also observed that the plaintiff had failed to exhaust administrative remedies in the form of an appeal to the New Castle County Planning Board, which in turn could "be appealed by writ of certiorari to the Superior Court."[114]

- In *Hundley v. O'Donnell*, the plaintiff sought an injunction in the Court of Chancery barring the New Castle County, Department of Land Use's denial of his subdivision proposal. But in so doing, the plaintiff failed to show why administrative appellate remedies or certiorari were insufficient.[115] The court reasoned that a "strong presumption exists" in favor of requiring plaintiffs to exhaust administrative remedies before invoking equitable jurisdiction and that the plaintiff had not shown why the circumstances warranted that form of relief.[116] The court also rejected the plaintiff's argument that certiorari was an inadequate remedy because the plaintiff only sought to correct an alleged error of law. The court also stated that "[w]ere there some factors pleaded here to suggest" that certiorari was inadequate, "the result might be quite different."[117]

- In *Bramble v. Dannemann*, a retired state police officer brought suit against the state in the Court of Chancery, arguing that the State Board of Pension Trustees had arbitrarily and capriciously denied his application for a service connected disability pension.[118] The court expressed "doubt" that certiorari

---

[111] *Id.* at *5.

[112] 2003 WL 21314499, at *1–2.

[113] *Id.* at *4.

[114] *Id.* (citing 10 *Del. C.* § 562).

[115] 1998 WL 842293, at *1, 5 (Del. Ch. Dec. 1, 1998).

[116] *Id.* at *2 (citation omitted).

[117] *Id.* at *3.

[118] 1980 WL 6366, at *1 (Del. Ch. Jan. 10, 1980).

"provides an adequate legal remedy in this situation," even though the State Board of Pension Trustee's decision was "quasi judicial in nature" and thus reviewable in the Superior Court through certiorari.[119] The court reasoned that the plaintiff's argument "is based on the charge that the Board ignored the weight of the evidence as well as its previous decisions in similar matters," so the purely legal review one would receive upon certiorari was inadequate.[120] The court nonetheless dismissed the case for lack of subject matter jurisdiction, reasoning that the related writ of mandamus was available and adequate because the plaintiff sought "review of the denial of a pension where the applicant is basing his claim to a pension on the alleged fulfillment of the necessary conditions fixed by statute."[121]

These and other cases illustrate a general preference for certiorari or similar procedures as ways to review administrative decisions in comparison with equity.[122] But each decision stopped short of establishing a bright-line rule rendering the availability of certiorari an independently sufficient impediment to equitable jurisdiction.[123] In each case,

---

[119] *Id.* at *2.

[120] *Id.*

[121] *Id.* at *3. "The writ of mandamus is an extraordinary 'remedial writ used to compel officers and other officials to perform their duties as required by law.'" *Mock*, 2022 WL 1744439, at *6 (quoting *Mell*, 2003 WL 1919331, at *8). Mandamus applies only to correct "nondiscretionary and ministerial wrong[s]" and "can compel reinstatement" where appropriate. *Id.* at *6, 11 (citations omitted). Neither party has argued that mandamus is available or adequate to remedy the plaintiff's termination.

[122] *See, e.g.*, *Citizens Against Solar Pollution v. Kent Cty.*, 2023 WL 2199646, at *2–3 (Del. Ch. Feb. 24, 2023) ("Based on a realistic evaluation of their complaint, Plaintiffs seek reversal of the Levy Court's quasi-judicial decision granting Freepoint a conditional use permit. As explained in *Delta Eta*, a writ of certiorari would adequately achieve that objective. Accordingly, I lack jurisdiction over Plaintiffs' claims."); *Middlecap Assocs., LLC v. Town of Middletown*, 2023 WL 2981893, at *2 (Del. Ch. Feb. 2, 2023) (holding that a writ of certiorari was "available" and "capable of affording an adequate remedy at law" for a challenge to a town council's denial of a conditional use permit, a "quasi-judicial act").

[123] *See* 1 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 2.03[b][3], at 2-62 (2d ed. 2022) (describing the

the court instead weighed the adequacy of writs like certiorari and mandamus against injunctive relief based on the facts alleged.[124]  Importantly for present purposes, no case law suggests that certiorari is an adequate mechanism for reinstating government employees.[125]  On that basis, along with the particular facts of this case—including the City's failure to meaningful grapple with this court's previous decision—the plaintiff's requested Reinstatement Injunction renders certiorari an inadequate remedy.

At oral argument, counsel for the defendants stated that, as a practical matter, the City would reinstate the plaintiff if he prevailed in a certiorari proceeding.[126]  But that is cold comfort given the procedural posture of this case for reasons discussed above.  As

---

injunctive relief subject matter jurisdiction inquiry as "necessarily fact-intensive and, thus, peculiar to each asserted claim").

[124] Distilled to hornbook form, the attack outline for "Bucket Two" of this court's subject matter jurisdiction inquiry can be framed as follows: (i) ask whether there is an adequate remedy at law (in the administrative review context, this might be an appeal); (ii) ask whether a writ (like certiorari) is available; (iii) if a writ is available, ask whether it is adequate and balance what the plaintiff stands to obtain versus an injunction (bearing in mind that in certain circumstances the plaintiff must still show a reasonable likelihood of a future harm for an injunction); (iv) if a writ is unavailable, ask whether there is a reasonable likelihood of future harm and follow the comprehensive analysis from *In re COVID*.  *See* 285 A.3d 1205.

[125] *See, e.g.*, *Gladney*, 2011 WL 6016048, at *4 & n.23 (determining that certiorari was adequate in part because the plaintiff's sought-after injunction did not seek reinstatement, thus, implying that reinstatement is not available through certiorari); *see also Stevens v. Steiner*, 1988 WL 40178, at *1 (Del. Super. Apr. 26, 1988) (stating that "this Court cannot order reinstatement of back pay or benefits within the context of a writ of certiorari"), *aff'd in part and rev'd on other grounds*, 574 A.2d 263, 1990 WL 38277, at *8 (Del. 1990) (TABLE); *see also Clark v. Smith*, 250 A.D. 233, 238 (N.Y. App. Div. 1937) (stating that, upon certiorari review, "[t]he court does not attempt to compel performance of the duty it defines, but leaves the aggrieved parties to pursue such further remedy as the law gives them" (citations omitted)).

[126] Dec. 16, 2022 Hr'g Tr. at 14:15–17:5.

such, it does not appear that here certiorari is an adequate path to address the plaintiff's request for reinstatement. The defendants' argument to this effect fails.

## C.    The Defendants' Waiver Argument

The defendants contend that the plaintiff has waived his ability to argue that the Reinstatement Injunction gives rise to an independent basis for this court to exercise subject matter jurisdiction. This argument also fails.

"When determining whether there is equitable jurisdiction, the Court of Chancery must look at the face of the complaint as of the time of filing."[127]  "The subject-matter jurisdiction of the Chancery Court depends solely . . . upon the allegations of the complaint and a determination of what the plaintiff really seeks by the complaint."[128]  Thus, "[j]urisdiction over the subject matter of a complaint is to be determined by an examination of the allegations in the complaint viewed in the light of what the plaintiff actually seeks and not necessarily what is pleaded."[129]

Subject matter jurisdiction concerns this court's powers, not the parties' rights. Therefore, parties may not waive the existence or non-existence of subject matter jurisdiction.[130]  Accordingly, "subject matter jurisdiction *arguments*, cannot be waived,"

---

[127] *Shearin v. Mother AUMP Church*, 755 A.2d 390, 2000 WL 975117, at *1 (Del. 2000) (TABLE) (citation omitted).

[128] *Diebold Computer Leas., Inc.*, 267 A.2d at 588.

[129] *Chateau Apartments Co. v. City of Wilm.*, 391 A.2d 205, 207 (Del. 1978) (citation omitted).

[130] *See, e.g.*, *Athene Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376, at *4 (Del. Ch. July 31, 2019) ("This is a court of limited jurisdiction, and as such may not waive subject matter jurisdiction." (citing Ct. Ch. R. 12(h)); *Int'l Bus. Machs. Corp.*, 602 A.2d at

30

either.[131] Even a "tardily" raised argument whose delay might appear to "result in waiver," is not waivable "to the extent the argument would affect this court's subject matter jurisdiction."[132]

The defendants cite two cases that discuss waiver broadly, but neither addresses the overlay of the subject matter jurisdiction inquiry.[133] Nor is this jurist aware of a case finding such a waiver when evaluating subject matter jurisdiction arguments. Although it is true that as a general matter, "[i]ssues not briefed are deemed waived,"[134] the jurisdictional inquiry does not require such a result here.

But even were the court to entertain a waiver argument, the defendants' argument would still fail. Delaware courts use a "notice pleading standard" that aims to put a

___

77 n.5 ("[U]nlike many jurisdictions, judges in the Delaware Court of Chancery are obligated to decide whether a matter comes within the equitable jurisdiction of this Court regardless of whether the issue has been raised by the parties." (citations omitted)); *Bruno v. W. Pac. R. Co.*, 498 A.2d 171, 172 (Del. Ch. 1985) ("[I]n the absence of subject matter jurisdiction, a decision in this proceeding would be a nullity. . . . The parties to an action may not confer subject matter jurisdiction by agreement." (citations omitted)); *see also Maxwell v. Vetter*, 311 A.2d 864, 866 (Del. 1973) ("Lack of jurisdiction may be raised at any time in the proceedings.").

[131] *Jung v. El Tinieblo Int'l, Inc.*, 2022 WL 16557663, at *10 (Del. Ch. Oct. 31, 2022) (emphasis added) (citation omitted).

[132] *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *11 (Del. Ch. Oct. 5, 2018) (denying the defendants' motion to dismiss for lack of subject matter jurisdiction, which the defendants had partially advanced on the basis that mandamus would be available in the Superior Court, but leaving open the chance for the defendants to renew tardily raised standing arguments on the basis that their jurisdictional heft renders such arguments non-waivable).

[133] *See* Defs.' Suppl. Reply Br. at 4–5 (citing *Bocock v. Innovate Corp.*, 2022 WL 15800273 (Del. Ch. Oct. 28, 2022); *In re Mobilactive Media, LLC*, 2013 WL 297950 (Del. Ch. Jan. 25, 2013)).

[134] *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) (citations omitted).

defendant on "notice of the claim being brought against it and prevent unfair surprise."[135]
"An allegation, though vague or lacking in detail, is nevertheless 'well-pleaded' if it puts the opposing party on notice of the claim being brought against it."[136] Arguments are thus waived when they are "not fairly or timely presented"[137] and so fail to put the other party on notice.

Here, the Amended Complaint pleads facts relating to the plaintiff's dismissal, including statements to the effect that the WPD told the plaintiff that "information contained within his residency affidavits were the product of fraud and dishonesty, in violation of the WPD's rules and regulations."[138] The Amended Complaint describes the genesis of the revised residency definition, describes how the City applied it to the plaintiff, and requests the Reinstatement Injunction. The Amended Complaint also incorporates by reference the arbitration award rendered on March 4, 2019, in which an arbitrator "returned a decision finding that the City's unilateral modification of the definition of 'residence' was in violation of the Collective Bargaining Agreement."[139] Although an ideal complaint would have directly linked these allegations to the plaintiff's requested injunctive relief,

---

[135] *Meyers v. Intel Corp.*, 2015 WL 227824, at \*4 (Del. Super. Jan. 15, 2005) (citations omitted); *see also VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611–12 (Del. 2003) (stating that Delaware deploys a "notice pleading" standard).

[136] *VLIW Tech.*, 840 A.2d at 611 (citations omitted).

[137] *Winshall v. Viacom Int'l, Inc.*, 55 A.3d 629, 642 (Del. Ch. 2011) (citations omitted).

[138] *See* Am. Compl. ¶ 30.

[139] *Id.* ¶ 41.

taken holistically, the defendants have sufficient notice of the plaintiff's bases for invoking this court's jurisdiction.

The defendants also argue that the plaintiff impermissibly relies upon additional documents outside the Amended Complaint to show that the dishonesty charge is inextricably intertwined with the residency charge. The defendants specifically reference the December 16, 2022 hearing in which this court asked counsel for the plaintiff to clarify his basis for the intertwinement theory in the record, and counsel for the plaintiff said he had none in the record to date.[140]

It is true that the court had to do work to get the plaintiff to tease out his argument. It is also true that the plaintiff relied upon additional record evidence beyond the Amended Complaint to make his inextricably-intertwinement argument. That is not fatal in the context of a Rule 12(b)(1) argument.[141] Moreover, the plaintiff only advanced the inextricably-intertwinement argument in response to the defendants' argument that the dishonesty charge was an "independent and sufficient basis for his dismissal."[142] The defendants themselves reached for supplemental documents outside the Amended Complaint for support on this point.[143] Indeed, one of the documents the plaintiff invokes to support his intertwinement theory is the same document the defendants added to the

---

[140] *See* Defs.' Suppl. Reply Br. at 1–3 (citing Dec. 16, 2022 Hr'g Tr. at 33:13–35:17).

[141] *See supra* n.34.

[142] *See* Defs.' Opening Br. at 12–13.

[143] *See id.*, Ex. A.

33

record themselves.[144]  In context, it is hard to see how the plaintiff's addition of disciplinary files to the record is inappropriate or prejudicial to the defendants.

The defendants' waiver argument fails.

## III.  CONCLUSION

For the foregoing reasons, the motion to dismiss is denied.  The court has subject matter jurisdiction over this action as a result of the well-pled Reinstatement Injunction, and the court may exercise clean-up jurisdiction over the remaining issues.

Although this case affects a person's livelihood, it has languished.  That is due to the court's erroneous initial decision and the time spent on appeal, the silence of the parties after remand, the insufficiency of the initial briefing, and the need for supplemental briefing and oral argument.  One can also toss the recalcitrance of the defendants to meaningfully grapple with the effects of their prior loss in the FOP Action atop the list of contributing factors.  In all events, this action will move forward far faster.  The parties are ordered to confer on a case schedule that leads to a trial no later than March 2024 and to contact Chambers to obtain a trial date.  If either party plans to move for summary judgment, they are to ask for leave to do so as soon as practicable and well in advance of March 2024.

---

[144] *See* Pl.'s Suppl. Answering Br. at 17–18 (citing Dkt. 41, Ex. I (OPS Investigative Rep. Dated Nov. 27, 2017)).  The plaintiff's Exhibit I is the same document that the defendants originally filed as Exhibit A to their motion to dismiss on April 15, 2020.  *See* Defs.' Opening Br., Ex. A.