**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ROBERT C. CECIL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-0892-BWD |
| | ) | |
| RYAN C. CECIL, as Successor Trustee | ) | |
| of the Cecil Residence Trust U/T/A | ) | |
| dated July 3, 2018, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>ORDER DENYING MOTION TO DISMISS COUNTERCLAIMS</u>

WHEREAS:[1]

    A.    On August 31, 2023, petitioner Robert C. Cecil ("Petitioner") initiated this action through the filing of a Petition to Remove Successor Trustee, For Accounting and Related Relief (the "Petition"). Pet. To Remove Successor Tr., For Accounting And Related Relief [hereinafter, "Pet."], Dkt. 1. The Petition alleges that on July 3, 2018, Ruth E. Cecil and Richard C. Cecil ("Decedent") executed a Trust Agreement settling The Cecil Residence Trust dated July 3, 2018 (the "Trust") and naming their children—Petitioner and respondent Ryan C. Cecil ("Respondent")—as well as their grandchildren—Roxanne Cecil and Eric Cecil—

---

[1] The following facts are taken from the Petition, the Counterclaims (defined below), and the documents incorporated by reference therein. *See Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)).

as beneficiaries of the Trust. Pet. ¶¶ 1-8. The same day, Decedent executed a Last Will and Testament (the "Will") naming the Trust as the residuary beneficiary of his estate. *Id*. ¶ 6. Decedent died on July 18, 2022, and on December 19, 2022, Respondent executed a Change of Trustee Agreement, "us[ing] his position as the father of two of the three beneficiaries to control three of the four votes to name himself Successor Trustee for the benefit of him and his children." *Id*. ¶¶ 15, 17. Acting as Successor Trustee, Respondent then transferred real property owned by the Trust in exchange for $1.65 million, distributing some proceeds to the beneficiaries and holding the remainder in escrow. *Id*. ¶ 18. Count I of the Petition asserts a claim for breach of fiduciary duty against Respondent; Count II demands an accounting; Count III seeks Respondent's removal as Successor Trustee; and Count IV requests the imposition of a constructive trust. *Id*. ¶¶ 21-53.

B.    On October 26, 2023, Respondent filed an Answer to Petition to Remove Successor Trustee, Affirmative Defenses, and Counterclaims (the "Counterclaims"). Answer To Pet. To Remove Successor Tr., Affirmative Defenses, And Countercls. [hereinafter, "Countercls."], Dkt. 6. The Counterclaims allege that by March 2020, Decedent "was suffering from serious cognitive deficits such as dementia," "was not capable of managing his own affairs," "resided with Petitioner," and "was entirely dependent on Petitioner for his care and companionship." Countercls. ¶¶ 55-56. On July 5, 2020, Decedent sold his 2007

2

Cadillac DTS (the "Vehicle") to Petitioner for $3,495, simultaneously transferring a three-digit Delaware license plate worth between $75,000 and $130,000 (the "Plate"). *Id*. ¶¶ 57-59. Counterclaim I challenges that transaction (the "Transfer") on grounds of lack of capacity; Counterclaim II challenges the Transfer as the product of undue influence; Counterclaim III asserts a claim for unjust enrichment; and Counterclaim IV "seeks a declaratory judgment that no consideration was paid for the Vehicle and Plate." *Id*. ¶¶ 61-83.

C. On November 1, 2023, Petitioner moved to dismiss the Counterclaims (the "Motion to Dismiss"). Dkt. 7. On December 8, 2023, Petitioner filed an opening brief in support of the Motion to Dismiss. Pet'r/Countercl. Def. Robert C. Cecil's Op. Br. In Supp. Of His Mot. To Dismiss Countercls. [hereinafter, "OB"], Dkt. 10. On January 16, 2024, Respondent filed an answering brief in opposition to the Motion to Dismiss. Resp't/Counterclaimant's Ans. Br. To Pet'r/Countercl. Def.'s Mot. To Dismiss [hereinafter, "AB"], Dkt. 11. On January 31, 2024, Petitioner filed a reply brief in further support of the Motion to Dismiss. Pet'r/Countercl. Def. Robert C. Cecil's Reply Br. In Supp. Of His Mot. To Dismiss Countercls. [hereinafter, "RB"], Dkt. 13. Oral argument on the Motion to Dismiss is unnecessary.

NOW, THEREFORE, IT IS HEREBY ORDERED, this 15th day of March, 2024, as follows:

3

1. Petitioner has moved to dismiss the Counterclaims for lack of standing. "Where 'the issue of standing is so closely related to the merits, a motion to dismiss based on lack of standing is properly considered under Rule 12(b)(6) rather than Rule 12(b)(1).'" *Delta Eta Corp. v. City of Newark*, 2023 WL 2982180, at *19 (Del. Ch. Feb. 2, 2023) (quoting *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1280, 1286 (Del. 2007)). The Court "must determine whether the petitioner has pled facts from which it may reasonably be inferred that she has standing to bring her claims." *In re Corbett v. Corbett*, 2019 WL 6841432, at *4 (Del. Ch. Dec. 12, 2019). When reviewing a motion to dismiss under Court of Chancery Rule 12(b)(6), Delaware courts accept all well pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

2. Petitioner contends that Respondent lacks standing to challenge the Transfer because he is neither a party to that transaction nor the administrator of Decedent's estate. *See* OB at 6-9; RB at 1-5. But as this Court has held, "[a] petitioner has standing to challenge a fiduciary's actions taken to the detriment of a decedent's estate where the petitioner has standing to challenge the decedent's will." *In re Corbett*, 2019 WL 6841432, at *4 (holding that a petitioner who pled she was both a testate and intestate beneficiary of the decedent's estate "ha[d] standing to bring not only [a] caveat action [challenging a will], but also to challenge

Respondents' actions [during his lifetime] that diminished Decedent's estate"); *see also Hill v. Myers*, 2020 WL 3171372, at *3 (Del. Ch. June 15, 2020) (holding that the plaintiffs' positions as both "the intestate heirs of the Decedent's estate and the intended beneficiaries of the Property under the Will" gave them "standing to pursue claims against Defendant for her role in allegedly thwarting their interests" by selling the decedent's property during his lifetime "at a reduced value and in a way that ensured the proceeds of the sale flowed to Defendant and her family" instead of to the estate). The Counterclaims allege that Petitioner, acting in a fiduciary capacity, facilitated a self-interested Transfer that diminished Decedent's estate. *See* Countercls. ¶¶ 67-69. As the undisputed sole beneficiary under Decedent's Will, the Trust has standing to challenge the Transfer. And as Successor Trustee, Respondent can bring that challenge on behalf of the Trust.

3. Petitioner suggests that this Court's decision in *Rambo v. Fischer* compels a different result. 2022 WL 4180890 (Del. Ch. Sept. 13, 2022), *R. & R. adopted sub nom. In re Orkin*, 2022 WL 4549173 (Del. Ch.). *See* OB at 8; RB at 1. It does not. In *Rambo*, the Court held that, although the Durable Personal Powers of Attorney Act grants certain specified individuals standing to challenge transactions effectuated by an agent acting under a power of attorney during a principal's lifetime, "[t]he power to bring challenges after the [principal]'s death rests solely in . . . the executrix of the [principal]'s estate." *Id*. at *6. Because the Transfer

5

challenged in the Counterclaims was not made by an agent acting under a power of attorney, that statutory interpretation does not apply.

4.  Petitioner also contends that the Counterclaims are barred by the equitable doctrine of laches. *See* OB at 9-14; RB at 6-9. "Statutes of limitations traditionally do not apply directly to actions in equity, although courts of equity may apply them by analogy in determining whether a plaintiff should be time-barred under the equitable doctrine of laches." *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 975 (Del. Ch. 2016). Looking to the three-year limitations period under 10 *Del. C.* § 8106, Petitioner argues that the analogous statute of limitations here ran on July 5, 2023—nearly four months before the Counterclaims were filed on October 26, 2023. *See* OB at 12. Respondent counters that the statute of limitations was tolled pursuant to 10 *Del. C.* § 8116, which states:

> If a person entitled to any action comprehended within §§ 8101-8115 of this title, shall have been, at the time of the accruing of the cause of such action, under disability of infancy or incompetency of mind, this chapter shall not be a bar to such action during the continuance of such disability, nor until the expiration of 3 years from the removal thereof.

5.  "Generally, whether equitable tolling applies raises a fact-intensive inquiry that is not amenable to a motion to dismiss." *Riskin v. Burns*, 2020 WL 7973803, at *16 (Del. Ch. Dec. 31, 2020). Here, the Counterclaims allege sufficient

6

facts to support a reasonably conceivable basis for tolling under Section 8116.[2] Assuming the truth of those allegations, as I must, the limitations period was tolled at least until Decedent's death, on July 18, 2022.  Using that date, the Counterclaims were timely.[3]

6.      Petitioner also points out that "the doctrine of laches also permits this Court 'to hold a plaintiff to a shorter period than [an analogous statute of limitations at law] if, in terms of equity, the plaintiff should have acted with greater alacrity, and when the plaintiff's failure to seek equitable relief with alacrity threatens prejudice to the other party.'"  OB at 11 (quoting *Whittington v. Dragon Gp., L.L.C.*, 991 A.2d 1, 8 (Del. 2000)).  Again, this analysis "is 'not ordinarily well-suited' for treatment on a Rule 12(b)(6) motion."  *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 295 (Del. Ch. Dec. 31, 2020) (quoting *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009)), *aff'd*, 126 A.3d 1115 (Del. 2015).  Because it is not clear from the

---

[2] *See* Countercls. ¶ 55 ("Mr. Cecil was suffering from serious cognitive deficits such as dementia. Mr. Cecil was not capable of managing his own affairs and resided with Petitioner."); *id*. ¶ 62 ("At the time the alleged transfer of the motor vehicle and license plate were completed, Mr. Cecil's mental and physical condition had been significantly declining. Mr. Cecil was suffering from dementia at the time the documents were executed."); *id*. ¶ 63 ("Mr. Cecil lacked legal capacity to sign legal documents.  Mr. Cecil was unable to exercise thought, reflection, and judgment and did not understand what he was doing and could not comprehend his actions.").

[3] Separately, Petitioner contends that Respondent was on inquiry notice of the Counterclaims by December 19, 2022, when he was appointed Successor Trustee, or May 8, 2023, when he sold Trust property.  OB at 12-13.  In either case, the Counterclaims would not be time-barred under a three-year statute of limitations.

face of the Counterclaims either that Respondent unreasonably delayed in asserting the Counterclaims, or that Petitioner was prejudiced by any such delay, I conclude that laches does not support a pleadings-stage dismissal of the Counterclaims.

7.    For the foregoing reasons, the Motion to Dismiss is DENIED.

8.    This order is a final report pursuant to Court of Chancery Rules 143 and 144.  Exceptions to this and all other interlocutory reports in this action are stayed under Court of Chancery Rule 144(f).

/s/ Bonnie W. David

Bonnie W. David
Magistrate in Chancery